ALICE M. STOCKWELL et al., Appellants, v.
MAJOR A. STOCKWELL et al.

Division One, December 19, 1914.

1. PARTITION: Conveyance in Tail: Life Tenant Living: Contingent Remainders. Under Sec. 2872, R. S. 1909, providing that one who by the laws of England would have become seized in fee tail of lands, shall be deemed to be seized for his life only, the remainder to pass in fee to those to whom the estate would have first passed by the common law at his death, and Sec. 2874, which provides that the remaindermen shall take as purchasers, the grantee in a deed reading to her and her "body heirs" cannot, without statutory authority, have the land sold for partition between her and her children and thus destroy the reversion.

2. ——:——:——:——: Sec. 2559, R. S. 1909. Sec. 2559, R. S. 1909, providing that where lands are held in joint tenancy, tenancy in common, or coparcenary, including estates in fee, for life, or for years, tenancy by the curtesy and in dower, any of the parties interested may maintain a suit for partition, affords no authority to a grantee in a deed to her and her bodily heirs to maintain partition between her and her children.

3. ——:——:——:——: Sec. 2612, R. S. 1909. Sec. 2612, R. S. 1909, providing that if in any case, from the nature and amount of the property to be divided, and the number of the owners, partition in kind cannot be made without great prejudice to the owners, an order of sale may be made without the appointment of commissioners, leaves to Sec. 2559 the designation of the title necessary to maintain the proceeding, and gives a contingent remainderman no right to a sale for partition.

4. ——:——:——:——: Representation of Expectancies. The fact that the law allows partition of joint tenancies and tenancies in common, each possessory holder being regarded as the representative in the partition proceedings of the owners of expectant estates, whether vested or contingent, limited upon his interest, affords no authority for partition, while the first taker lives, by the joint tenants of a contingent remainder under a conveyance in tail, especially where the owner of the reversion is not joined.

Appeal from Ray Circuit Court.—*Hon. Francis H. Trimble,* Judge.

AFFIRMED.

*Carolus & Wilcox* for appellants.

(1)   The court erred in overruling plaintiffs' demurrer to the new matter contained in defendant's answer, "that under the law this estate cannot be partitioned and that the heirs of James M. Stockwell are necessary parties." Robertson v. Brown, 187 Mo. 462. (2)   The court erred in its finding and judgment that the estate described in plaintiffs' petition could not be partitioned, and in dismissing plaintiffs' petition and denying partition. Reinders v. Koppleman, 68 Mo. 482; Preston v. Brant, 96 Mo. 552; Godman v. Summons, 113 Mo. 122; Sikemeier v. Galvin, 124 Mo. 367; Sparks v. Clay, 185 Mo. 393; Acord v. Beaty, 244 Mo. 126.

*Frank B. Fulkerson* and *Frederick D. Fulkerson* for respondents.

(1)   Mrs. Stockwell, having under the conveyance a life estate only, holding the entire forty acres of land so long as she lives, could not bring a partition suit for the reason that she had nothing to partition. She has it all, so long as she lives, with a right to do as she pleases with it. Hayes v. McReynolds, 144 Mo. 348; Atkinson v. Brady, 114 Mo. 200. The other plaintiff, Edith Grace Stockwell, has a contingent remainder only. Her interest depends entirely upon her surviving her mother. The interest which plaintiff Edith Grace Stockwell takes cannot become vested until after her mother's death. Respondent contends that because Edith Grace Stockwell did not have at the time the suit was brought (nor has she yet) a vested estate she is not a proper party plaintiff. If neither plaintiff could alone bring this suit surely both of them together cannot bring it. In order to successfully bring partition

the plaintiff must have a present, definite, fixed and vested interest in the land. It is not possible for this or any other court at the present time to determine who the bodily heirs of Alice M. Stockwell are, nor can that fact be determined until after her death. The moment Alice M. Stockwell dies the remainder or remainders that now must be considered contingent will immediately become vested. If Edith Grace Stockwell should die before her mother the entire estate now contingent will be vested in the defendant, Major A. Stockwell, thus demonstrating the futility of this partition proceeding. (2) Under the statutes of this State plaintiffs neither singly nor collectively are authorized to bring partition. Sec. 2559, R. S. 1909; Rutherford v. Rutherford, 115 Am. St. 799; McConnell v. Bell, 130 Am. St. 770; Field v. Leiter, 125 Am. St. 997; Brown v. Brown, 28 L. R. A. (N. S.) 125; Smith v. Smith, 57 S. W. 198; Johnson v. Johnson, 170 Mo. 58; Collins v. Crawford, 214 Mo. 167; Sullivan v. Sullivan, 66 N. Y. 37; Stephens v. Endus, 13 N. J. L. 271; 2 Sharswood & Budd, Am. Law of Real Property, p. 375.

BROWN, C.—This is a suit for partition. The petition was filed in the Ray County Circuit Court February 25, 1911, and states that James M. Stockwell on June 27, 1905, being the owner in fee of the northeast quarter of the northeast quarter of section 28, township 54 of range 29 in said county, conveyed it by general warranty deed to the plaintiff Alice M. Stockwell and her bodily heirs; that said grantee is now fifty years old and has two children only, plaintiff Edith Grace Stockwell and defendant Major A. Stockwell, and that there is no living descendant of any deceased child; that Major A. Stockwell is a minor and the defendant D. B. Kelley is his guardian and curator of his estate; that the interest of plaintiff Edith Grace is subject to a mortgage executed by her to Henry S.

Kelley for $175, and Henry S. Kelley is now deceased and defendant D. B. Kelley is his administrator; that the land is not susceptible of division in kind. It asks for partition and that it be sold and the proceeds divided among the parties entitled according to their respective rights and interests, and that the present value of the life interest of Alice M. Stockwell be computed and paid to her in cash.

The answer admits the facts so stated, denies the right to partition the land, and states that the interest of Alice M. Stockwell is subject to mortgage secured by her to Ralph R. Kelley to secure $200 with interest at eight per cent; and that the heirs of James M. Stockwell, of whom there are several, are necessary parties. Demurrers both to the petition and new matter in the answer having been overruled the cause went to trial upon an agreement substantially as set forth in the pleadings, and judgment was given for the defendants, the court holding that the estate was not subject to partition and that the heirs of James M. Stockwell were necessary parties.

I.   The parties present but one question in this appeal.  It is whether the life tenant and one of the two contingent remaindermen may maintain an action against the other remainderman for the sale of the land in partition under our statute, upon this title.   We have used the words "under our statute" because the appellant, in his argument, distinctly invokes the statute as the authority for the proceeding, and we find nothing in the law authorizing the life tenant to call upon a court of equity to exercise its beneficent jurisdiction for the sole purpose of cutting off, by sale, the right of the contingent remainderman without giving a reason why.   Nor have we been more fortunate in finding, in the principles and rules of equity, authority for his co-remainderman to do the same thing.   We treat the suit as a simple proceeding for the *sale* of the

land, because all parties in their pleadings agree that it is not susceptible of physical division.

All the parties claim by deed from the owner of the fee to plaintiff Alice M. Stockwell, mother of her co-plaintiff and the defendant Major A. Stockwell, who are her only descendants. The defendant conveyed the land to the grantee "and her body heirs." That this is equivalent to "her bodily heirs," or "the heirs of her body" is evident, and unquestioned by the parties. In determining the estate taken by these words it is unnecessary to trace the rise and fall of the estate tail from the Statute De Donis, which probably created it so long ago as the year 1285, through the struggle to judicially maintain its evident purpose exemplified in the famous case of Wolfe v. Shelley, 1 Co. 88, into our own Statute of Uses which built a new structure upon the same old foundation. [R. S. 1909, secs. 2872, 2874.] To understand this modern structure in its application to this cause it is necessary to keep in mind its ancient foundation. The Statute De Donis (13 Edw. I, c. 1) recited that "where one giveth land to another and the heirs of his body issuing" it seemed hard to the givers and their heirs that their will so expressed in the gift should not be observed, and that "after issue begotten and born between them (to whom the lands were given under such condition) heretofore such feoffees had power to alien the land so given, and to disinherit their issue of the land, contrary to the minds of the givers, and contrary to the form expressed in the gift; and further when the issue of such foeffee is failing, the land so given ought to return to the giver or his heir by form of the gift expressed in the deed, though the issue, if any were, had died; . . . yet the donors have heretofore been barred of their reversion;" and it accordingly enacted that "they to whom the land was given under such condition shall have no power to aliene the land so given, but that it shall remain unto the issue

*Statute de Donis.*

of them to whom it was given after their death, or shall revert unto the giver or his heirs if issue fail either by reason that there is no issue at all, or if any issue be it fail by death, the heirs of such issue failing.'' We have quoted so liberally because in this statute we find the best and most perfect expression of the law of entail by which inalienable titles to lands were transmitted from parent to child, subject to the law of primogeniture, to the most remote generation, and reverted to the original donor or his heirs upon failure of issue. In this form the estate tail came to America with the common law of England.

By the Revised Statutes of Missouri 1845 (p. 219, sec. 5) our Legislature enacted: ''That from and after the passage of this act, where any conveyance or devise shall be made, whereby the grantee or devisee shall become seized in law or equity, of such estate, in any lands or tenements, as under the statute of the thirteenth of Edward the First (called the statute of entails), would have been held an estate in fee tail, every such conveyance or devise shall vest an estate for life only in such grantee or devisee, who shall possess and have the same power over, and right in such premises, and no other, as a tenant for life thereof would have by law, and upon the death of such grantee or devisee, the said lands and tenements shall go and be vested in the children of such grantee or devisee, equally to be divided between them as tenants in common, in fee, and if there be only one child, then to that one, in fee, and if any child be dead, the part which would have come to him or her, shall go to his or her issue, and if there be no issue, then to his or her heirs.''

*Modified by Missouri Law.*

This statute, it will be observed, referring to the Statute De Donis by another name, swept the estate tail which it created out of existence so effectually that where the tenant in tail expectant died without issue before the life tenant, the lands, at the termina-

tion of the life estate, vested in his heirs generally. It is not necessary to inquire whether this provision was inconsistent with that provision of section 7 of the same act which directed that on the termination of the life estate the persons who should be the heirs or heirs of the body of the tenant for life should be entitled to take as purchasers by virtue of the remainder limited to them, because in enacting the General Statutes (p. 442, sec. 4), the Legislature noticed the incongruity, and replaced section five by the one which has been continued through all the revisions, and is now in force as section 2872, Revised Statutes 1909. It provides that ''the remainder shall pass in fee simple absolute to the person to whom the estate tail would, on the death of the first grantee, devisee or donee in tail, first pass according to the course of the common law, by virtue of such devise, gift, grant or conveyance.'' And this first estate in fee simple vests by purchase and not by descent. [Id., sec. 2874.]

It may be said with much verbal reason that this statute in its present form expressly adopts the common-law rule of primogeniture in its application to estates in fee tail of this character. This rule, however, had its foundation in a feudal system of land tenures that no longer exists except in tradition. It is long since it had any reason for being, except to perpetuate a landed aristocracy, and it is contrary to the spirit of our Federal Constitution and the institutions upon which our government is founded and has never been in force in this country. [Tiedeman on Real Property, sec. 474.]

From applying these principles it is easy to determine the relation of the parties to this suit to the land which is its subject. Mrs. Stockwell

**Partition: Estate Tail: Life Tenant Living: Contingent Remainders.** is seized of a life estate, so that no one can share with her the right to the possession of the whole during her life, and it ceases absolutely at her death. The stat-

ute not only withholds from her the power to determine to whom it shall then go, but it denies to her the capacity to be the medium through which it shall pass by providing that the remainderman shall take as purchaser from her grantor, so that it cannot be determined whether either of her children, parties to this suit, will take a vested interest in the land until her death shall fix its final disposition. Should both children live, they would, as purchasers under the deed, take the land as tenants in common. Should one of them die childless the other would take the entire fee. Should he leave children these would take as tenants in common with the survivor. If they should both die, leaving children, the children of both would take the fee as tenants in common. Should they both die childless during the mother's lifetime, and she should die without leaving other children, the land would revert to the grantor or his heirs as the case might be. But whoever will take upon the death of Mrs. Stockwell will not do so through her, or represent her with respect to the title, but as grantee in the deed under which she holds the life estate and upon her death may be identified by the description in the deed as definitely as if it granted to them the estate by name.

In so conveying the title to this land James M. Stockwell was not only exercising the common right to dispose of his own, but was making that disposition in the precise form the Legislature had enacted for that purpose. He had the right under this statute to determine that the land itself should be preserved for and go to the descendants of Mrs. Stockwell, in a form that did not admit of its being wasted, and that, in default of issue of her body living at the time of her death, it should go back to him and his heirs, and unless, as plaintiffs claim, there is something in the statute relating to partition which interferes with the disposition so plainly permitted in this one, and authorizes the court to take from him the fee which remains in

him to support his reversion, there is plainly no authority for the maintenance of this suit. [Tiedeman on Real Property (3 Ed.), 431 and note.]

II. The first section of the article relating to partition (R. S. 1909, sec. 2559) is as follows: "In all cases where lands, tenements or hereditaments are held in joint tenancy, tenancy in common, or coparcenary, including estates in fee, for life, or for years, tenancy by the curtesy and in dower, it shall be lawful for any one or more of the parties interested therein, whether adults or minors, to file a petition in the circuit court of the proper county, asking for the admeasurement and setting off of any dower interest therein, if any, and for the partition of the remainder, if the same can be done without great prejudice to the parties in interest; and if not, then for a sale of the premises, and a division of the proceeds thereof among all of the parties, according to their respective rights and interests."

Sec. 2559, R. S. 1909.

This section refers only to lands held, at the time the suit may be instituted, in joint tenancy, tenancy in common, or coparcenary. The estate so held may include estates for life or for years as well as in fee, and also includes tenancy by the curtesy and in dower. The controlling feature of the provision is that there must be an existing undivided tenancy or holding in land by two or more owners, susceptible of being so parceled between them as to become a several holding by each. We may at the outset eliminate Mrs. Stockwell, the life tenant, because she not only has nothing which is susceptible of division, her tenancy covering in its breadth the entire estate and in its length the period of her life, in and during which no other person can have any interest unless severed from this freehold by her own act. That this does not constitute a subject for partition is not only evident from the use of

a word which, in such a connection, can have no other meaning than the severance of common and undivided interests, but also from the frequent adjudications of this court. [Atkinson v. Brady, 114 Mo. 200; Throckmorton v. Pence, 121 Mo. 50; Stewart v. Jones, 219 Mo. 614.]

In the Trockmorton case a title depended upon the validity of a suit in partition by the plaintiff, who, under a deed similar to this one, was the owner of a life estate in an undivided half of a tract of land with remainder in fee to her three children, and had acquired the other undivided half of the same land by descent from her father subject to the payment of his debts. She and her children joined in a suit in partition to have the land in which she held the life estate and her children the remainder upon condition of survival, set off from that part which she had inherited from her father subject to the payment of his debts; and a decree was rendered accordingly. This court, reversing the judgment, held the partition void, saying (p. 58): ''The proceedings in partition were absolutely void; plaintiff being the sole owner of the land, she could not maintain partition proceedings against herself, and the administrator of her father's estate had no interest in the land of his intestate which would authorize him to prosecute a partition suit, or to make him a party thereto.'' The administrator was made a party in that case. Eliminating him, as did the court, left the suit in the precise situation of this one, in which the sole parties are the life tenant and contingent remaindermen. In the Atkinson case, supra, it was held that while the tenant by the curtesy could not maintain a suit to partition the life estate so held by him, yet where the estate by the curtesy concurred in the same owner with an undivided fifth of the remainder, he might maintain a suit against the owners of the other four-fifths to divide the property subject to the curtesy, leaving the latter intact. While in the Stew-

art case, supra, the decision was placed upon the stat-
ute declaring that "no partition or sale of lands  . . .
devised by any last will shall be made  . . .  con-
trary to the intention of the testator expressed in any
such will," the same principle seems to be involved as
in this case and there is no intimation that a different
rule should apply in a case involving title by deed.
Mrs. Stockwell, then, having no undivided interest in
the land that could be the subject of partition, her
presence can afford no support to the right of the other
parties to this relief asked.  She is a party only to be
present and to contend for and receive what falls to
her by reason of the relief, if any, to which the others
may be entitled.

III.  The appellants do not contend that the life
tenant of the entire property may, by partition, have
her estate severed from some imaginary residue of the
whole, or that contingent remaindermen, who have no
other estate than a hope limited by their
fears, are entitled to have it reduced by
the court to the terms of acres, measured
off and given to them in severalty.  They do not even
claim, so far as we can see, that the statutory judg-
ment characteristic of all partition, ascertaining and
declaring the rights, titles and interests of the parties,
which hang in the scale of life and death, and may at
any time be found wanting, can by any possibility be
arrived at and entered.  They simply say that by the
terms of this statute no separable interest is necessary
to the maintenance of partition, but that it may be
maintained for the sole purpose of securing a sale of
property in which there are no common interests sus-
ceptible of ascertainment and division; and they point
to section 2612 as the foundation of this theory.  It
provides that "if in any case, from the nature and
amount of the property sought to be divided, and the
number of the owners, it shall be apparent to the

Sec. 2612,
R. S. 1909.

court that the assignment of dower, if any, and partition thereof, in kind, cannot be made without great prejudice to the owners, an order of sale may be made, without the appointment of commissioners." This provision alone seems conclusive against their contention. It singles out and specifies the instances in which it is intended to give the court such jurisdiction and the ground upon which it may be exercised. It rests only upon the nature and amount of the property and the number of the owners. It leaves the matter of title necessary to call it into action to the first section, which requires that it be a joint tenancy, a tenancy in common or coparcenary, and stands upon the ground that, as was said by this court in Martin v. Trail, 142 Mo. 85, 97, "the primary object in a partition suit is to separate interests into distinct portions of the land to be held by the respective owners in severalty," from whence comes its jurisdiction.

**Representation of Expectant Estates.** It frequently happens that a life estate is divided among many tenants in common. The husband after his curtesy has become consummate by the death of his wife, sometimes transfers undivided interests to different purchasers. Lands assigned and held as dower are frequently disposed of in the same way. Joint tenancies and tenancies in common in life estates are constantly created both by will and by deed, and the policy of the common law as well as all the various statutes passed to carry into effect or modify its rules, has always been to favor the partition of these tenancies at the demand of either or any of the owners, so that they may not be tied together like the Kilkenny Cats to prevent escape from their differences, or compelled to live like two dogs who must gain their sustenance from the same bone. For this reason the common law from time immemorial has favored the partition of such possessory estates and our statute by the section first quoted is expressly applied to them.

This application met various difficulties which had to be and were overcome in accordance with the principles which created the necessity. Frequently two estates tail, or life tenancies upon which were limited successive remainders and reversions, vested or contingent, as well as joint tenancies and tenancies in common under leases for years, existed in the same land, and the problem was to permit the partition of those estates which lie in possession without injustice or unnecessary interference with those who might, whether in being or not yet born, have rights springing up in the future. To meet this necessity the rule came into existence that in case of voluntary partitions fairly and honestly made by those having the possessory title they should when justice and equity should require it, be considered the representatives of those whose interests had not yet accrued to them, who would therefore be bound by the act, so that their common expectancy would be converted into an expectancy in severalty of that part of the land which represented the interest to which it had attached. In case of judicial partition the same principle was applied. If those in being were made parties to the proceedings and properly notified the result bound them, for the judgment of the court was conclusively presumed to be right. Those not in being were supposed to be represented by those upon whose title their expectancy was founded. This principle has been recognized and acted upon by the English courts for more than a hundred years (Wills v. Slade, 6 Ves. Ch. 498; Gaskell v. Gaskell, 6 Sim. Ch. 643), and was followed and recognized in our own statute. [R. S. 1909, secs. 2561, 2562, 2563, 2564.] In all these cases the estate in expectancy was lifted from the undivided interest to which it attached and settled upon the divided share into which it had been changed by the partition, but in no case to which our attention has been called has it been held that contingent interests like those in this case, without legal title to sup-

port them, but abiding the manifestation of the will
of providence concerning them at the termination of
the existing life estate, are primary subjects of that
judicial division which we call partition. The shadow
cast by the reversion is somewhat denser and more
tangible than that of the contingent remainders, be-
cause it includes the fee simple title awaiting final in-
vestiture under the deed, but in this case the plaintiffs
have not thought it worth while to make the rever-
sioner a party.

Without further elaboration we hold that the
children of Mrs. Stockwell have not such a title as en-
ables them to maintain partition.

IV. It only remains to examine some of
the cases in which the question we have been
considering has been referred to by this court.
The diversity of the views we have expressed in these
lends to this case its principal interest and difficulty.
Reinders v. Koppelmann, 68 Mo. 482, did not involve
the question now before us. The plaintiff owned an
estate for the life of his wife and was in possession
of the land. The remainder of one undivided half
was *vested* in himself and three of the defendants in
equal shares, while the remainder in the other undivid-
ed half was partly *vested* in the heirs of the testator
whose will created all the existing estates in the land,
and partly contingent in the heirs of the living devisee
for life. The heirs of the testator were parties, as
were also those designated in the record as the "osten-
sible heirs" of the devisee. The question was, as will
be readily seen, whether the presence of these small
contingent interests prevented the other remainder-
men from having their vested interests set off to them,
as was done in Atkinson v. Brady, subject to the life
estate. We have carefully read this case in connection
with its facts, and find no expression in it which in-
dicates that the learned and distinguished judge who

wrote the opinion intended to assert the doctrine that
partition will lie among contingent remaindermen dur-
ing the existence of the life estate upon which it is limit-
ed. In fact he rests his decision entirely upon the
authority of Wills v. Slade, supra; Gaskell v. Gaskell,
supra, and Mead v. Mitchell, 17 N. Y. 210, in all of
which the question was whether or not partition could
be had between the owners of the present possessory
title so as to bind contingent remaindermen not *in esse.*

Preston v. Brant, 96 Mo. 552, another case cited
by the appellants, was placed directly upon the au-
thority of Reinders v. Koppelmann, and the holding
was that partition would lie, during the life of the life
tenant, among those in whom the remainder had
vested.

The only case to which we have been referred by
the appellants, or which we have been able to find,
which seems to sustain their position in this case, is
Sikemeier v. Galvin, 124 Mo. 367, which was partition
in which the life tenant and her brothers and sisters,
who were all her ''ostensible heirs'' were petitioners.
The land was held by devise to her for life, ''and upor
her death to pass to and to be vested in her right heirs,
whether lineal or collateral, as the same would be de-
clared by the present laws of the said State of Mis-
souri concerning descents and distribution.'' The
court, referring to Reinders v. Koppelmann, said:

''On the authority of this case, and the cases
therein and in appellant's brief cited, it would seem
that this action can be maintained, unless in contra-
vention of the testator's will; for it must be remem-
bered that all the interest that any of the parties have
in the real estate, is held under and by virtue of the
provisions of the will, and our statute provides that
no partition or sale of lands, devised by last will,
shall be made contrary to the intention of the testator,
expressed in such. [R. S. 1889, sec. 7142.]

"The effect of this proceeding will be to transfer the title in fee of the lot to the purchaser thereunder, in the lifetime of the life tenant. There is no express limitation in the will upon the alienation of the premises during the life of Mrs. Sikemeier. She, of course, could dispose of her life estate at any time, and so could the remaindermen, as a contingent remainder is alienable under our law. [Godman v. Simmons, 113 Mo. 122.] And the provisions in the tenth item of the will, by which the parties to this action who are the 'ostensible heirs or devisees' therein mentioned are expressly authorized, all concurring, to sell and convey the premises in fee simple, for reinvestment during the lifetime of the tenant for life, can hardly be construed as a prohibition of a resort to a mode of alienation authorized by law, at the instance of one or more of such heirs or devisees, by which the same purpose may be accomplished (R. S. 1889, secs. 7137-7163); for it goes without saying that upon a sale of the premises, in this proceeding, the net proceeds thereof, after the value of the interest of Mrs. Sikemeier has been ascertained and commuted, would have to be reinvested in accordance with the provisions of the will, under the order of the court until the termination of the life estate."

It will be observed that a sale of the property was expressly authorized by the will for the purpose of reinvestment in other St. Louis realty or to be loaned on real estate security, the reinvestment to remain subject to the same trust and conditions as the devised land. Whatever we may think of some of the language of the opinion, it is plain that the court really decided that partition was a mode of alienation and reinvestment to which the parties might resort in carrying out these provisions of the will, and we do not wish to be understood as now holding that it was not right.

In Sparks v. Clay, 185 Mo. 393, cited by the appellants, there were tenants in common of the freehold; two of whom were seized in fee simple and the other two of life estates with remainder in fee simple to the heirs of their respective bodies. The suit was in ejectment by a child of one of the life tenants born after a sale of the premises under a judgment in partition between the tenants of the freehold, to which the children then *in esse* of the two life tenants were parties. The court properly held that the plaintiff was bound by the judgment.

The last case decided in this court in which this general question was involved is Hill v. Hill, 168 S. W. 1165. The title involved was a devise by which the testator gave to his son and the son's wife the land in question "during their natural lives" and at the death of both to be divided equally between all his grandchildren; but in case the son should die before the daughter-in-law it was to be divided equally between her and the grandchildren. The testator died, and, without waiting for the death of either of them to further simplify the title, the son and his wife brought partition, asking, as in this case, for a sale, and that the value of the life estate be paid to them out of the proceeds. The defendant grandchildren demurred on the ground that the petition showed on its face that the lands were not subject to partition. The demurrer was sustained, and judgment entered accordingly, from which the appeal was taken. The appellant in this court relied for the reversal of the judgment chiefly on Reinders v. Koppelmann, supra, Preston v. Brant, supra, and Sikemeier v. Galvin, supra. In affirming the judgment, Brown, J., for Division No. 2 of this court said: "While the three cases mainly relied upon by appellant may not have been expressly overruled, they have been intentionally disregarded in cases where they were cited and could have been followed. We hold they are not con-

trolling authority in this State, in so far as they con-
flict with the conclusions announced in this case.''

We find nothing in the Missouri cases supporting
the theory of the appellant in this case, and, if we did,
we would be slow to follow it. We have also not only
carefully examined the cases adjudicated in other jur-
isdictions to which we have been referred, but the
importance of the question as here presented has led
us to some original investigation of our own with the
same result, and we do not care to become pioneers in
the invention of judicial devices to frustrate the at-
tempts of owners to devote their lands to the suste-
nance of their families and others, so that it may be
preserved and transmitted in kind, either as a whole
or in parcels representing their respective interests,
to the ultimate objects of their solicitude. That this
may be done while effectually preventing the owners
in common with others of vested interests in the land
from debarring their co-owners from partition by lim-
iting contingent remainders upon their own undivided
interests, is fully illustrated by the terms of our sta-
tute as interpreted by this court in the decisions to
which we have referred. While fully recognizing the
right of partition as it before existed, and extending
it, it only withholds it from those who have no such
title or interest as can be fixed and adjudicated by the
courts. What rights these latter may have that
might, under appropriate circumstances, call for par-
tition in equity, belongs to a field of inquiry not open-
ed up to us in these pleadings.

It follows from what we have said that the judg-
ment below must be affirmed. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion by
Brown, C., is adopted as the opinion of the court.
All the judges concur.