MILAN BANK, Appellant, v. HENRY RICHMOND et al.

Division Two, December 4, 1919.

1. **FRAUDULENT CONVEYANCE: Creditor Who Shares in Proceeds.** A judgment creditor who shares in the proceeds of the sale of land cannot avoid the sale as being in fraud of his rights.

2. ———: ———: **Attachment.** Defendant was surety on two notes held by plaintiff, one for $7000 and the other for $3280, and was the owner of 280 acres of land. Plaintiff obtained judgment on the $3280 note, and defendant sold the land for a fair value and paid the amount of the judgment to the circuit clerk, who turned it over to plaintiff, and the balance of the purchase money was paid to defendant. Thereafter, and within a few days, plaintiff brought suit on the $7000 note, and the land was attached, on the ground that the sale was in fraud of creditors. *Held*, that plaintiff, by accepting a part of the proceeds of the sale in satisfaction of its existing judgment, which was a first lien on the land, is in no position to question the validity of the sale, or to assert that it was fraudulently made, nor can it have its judgment on the $7000 note made a lien on the land.

3. ———: **Ratification: Estoppel.** Where a judgment creditor has collected a judgment on a certain note from a sale of the debtor's land, he cannot cause the land to be resold to satisfy another judgment on another note, on the ground that the first sale was fraudulent and invalid. When he saw the title pass to the purchaser and took a part of the proceeds in satisfaction of his existing judgment, he elected to ratify the sale. And whether the applicable principle is denominated estoppel or ratification, the result is the same.

Appeal from Sullivan Circuit Court.—*Hon. Fred Lamb,* Judge.

Milan Bank v. Richmond.

AFFIRMED.

J. B. Painter and E. B. Fields for appellant.

(1) Every conveyance of real estate to hinder or defraud creditors either prior or subsequent is clearly and utterly void. R. S. 1909, sec. 2881. (2) It has been held sound doctrine that actual (as contradistinguished from constructive) fraud participated in by both grantor and grantee, will vitiate a conveyance as to subsequent as well as to existing creditors. Cole v. Cole, 231 Mo. 260. (3) Fraud is rarely ever susceptible of positive proof. Its vermiculations are chiefly traceable by covered tracks and studious concealments. It is not to be presumed; but anything which satisfies the mind and conscience of its existence is sufficient. Massey v. Young, 73 Mo. 260; Burgert v. Borchert, 59 Mo. 80; State to use v. Estel, 6 Mo. App. 6; Groschke v. Bordenheimer, 15 Mo. App. 353; Frederick v. Allgaier, 88 Mo. 598; Gordon v. Ismay, 55 Mo. App. 322; Martin v. Estes, 132 Mo. 402; Howard v. Zweigart, 197 S. W. 46. (4) Want of consideration, or insufficiency of consideration for a sale of land or other property, by a debtor is always an element of fraud. Childers v. Pickinpaugh, 219 Mo. 376; Bank of Boonville v. Vollrath, 135 Mo. App. 63; Jones v. Hogan, 135 Mo. App. 347, 211 Mo. 45; Kennedy, Admr. v. Duncan, 157 Mo. App. 212; Johnson v. Mason, 178 Mo. App. 109; Lionberger v. Baker, 88 Mo. 447; Gentry v. Field, 143 Mo. 399. (5) A sale by an insolvent debtor not to pay his debts but to turn his seizable property into cash or notes that may be easily withdrawn from the reach of his creditors, if the purchaser had knowledge of such proposition, will be set aside. First National Bank v. Fry, 216 Mo. 24. (6) Knowledge of circumstances which would place an ordinary prudent man on inquiry may authorize the jury to find that the purchaser had knowledge that the property was sold in fraud of creditors. Johnson v. Mason, 178 Mo. App. 109; Bank of Commerce v. Bruns-

wick Tobacco Co., 155 Mo. 602. (7) Persons who having means of inquiring knowledge of fraud shut their eyes to the incriminating circumstances for the purpose of obtaining) advantage through the fraudulent acts, under the plea that they had no knowledge thereof, are chargeable with fraud. Veney v. Furth, 171 Mo. App. 678. (8) Where both the grantor and grantee of land intend to defraud the creditors of the grantor the conveyance should be set aside regardless of the adequacy of the consideration. Aull v. Galgin, 234 Mo. 171; Burgert v. Borchert, 59 Mo. 80; McDonal v. Hoover, 142 Mo. 484.

*D. M. Wilson* for respondent.

(1) He who comes into equity must come with clean hands. Modern Horse Shoe Club v. Stewart, 242 Mo. 421; Robinson v. Siple, 129 Mo. 208; Jarrett v. Morton, 44 Mo. 275. And this doctrine may be invoked by the appellate court on its own motion. Creamer v. Bivert, 214 Mo. 485. Morris paid the circuit clerk $3400.77. The clerk retained the costs (some $40), and paid the rest, say $3360, to the Milan Bank, and its attorneys satisfied the judgment rendered ·in the suit on the $3280, on the margin of the record. This money was part of the purchase price paid by Morris for the 280 acres, as the bank well knew. It accepted the money, thus recognizing the legality of the sale by Henry Richmond to Morris, and then, retaining the money, and never even offering to pay it back to Morris, brings this suit to set aside that very deed on the ground of fraud. (2) However clear Henry Richmond's fraud may be, the conveyance to Morris cannot be declared fraudulent unless Morris knew of Richmond's intent to defraud the bank and participated in it. Ryan v. Young, 79 Mo. 30; Bank v. Worthington, 145 Mo. 91; Dougherty v. Cooper, 77 Mo. 528.

WHITE, C.—In the Circuit Court of Grundy County, September 29, 1913, the plaintiff in this case

recovered judgment against defendant Henry Richmond in the sum of $12,999.68, the amount of a note for seven thousand dollars, executed September 14, 1905, and interest. On March 26, 1914, plaintiff filed his petition in this case in the Circuit Court of Sullivan County for the purpose of enforcing the payment of said judgment against two hundred and eighty acres of land in Sullivan County, formerly owned by the defendant Richmond and conveyed by him to defendant Morris, and by defendant Morris conveyed to defendant Meeks, it is claimed in fraud of the plaintiff. The cause was tried and judgment rendered September 11, 1915, in favor of defendants, and plaintiff appealed to this court.

The salient facts leading up to the filing of the present suit are as follows:

On September 14, 1905, W. H. Richmond, son of defendant Henry Richmond, was indebted to the Milan Bank, plaintiff herein, on two notes, one for seven thousand dollars and one for three thousand two hundred and eighty dollars, with the defendant Henry Richmond as his surety; other persons also were sureties on the seven-thousand-dollar note. The incidents connected with the placing of this indebtedness are unimportant for our purpose here. Soon afterwards suit was brought on the three-thousand-two-hundred-and-eighty-dollar note and judgment obtained against the defendant Henry Richmond, his son having fled the country at the time, it appears a fugitive from justice. September 20, 1905, six days after the notes were signed, an attachment suit was brought by the plaintiff bank on the seven thousand-dollar note. Four hundred acres of land, including the land in controversy here, was attached; also the land of other defendants, sureties on the note. On January 3, 1906, this attachment suit was dismissed by the plaintiff. On the sixteenth day of January another attachment suit was brought on the same note and the same land was attached.

On the eleventh day of January, 1906, eight days after the dismissal of the first attachment suit, and
3—280 Mo.

five days before the second was brought, the defendant Henry Richmond sold the two hundred and eighty acres of land in controversy to defendant Morris for twenty dollars per acre, the total price amounting to five thousand six-hundred dollars, which was paid in cash and conveyance was made to Morris. Something like a year later Morris sold and conveyed the land to defendant Meeks for seven thousand dollars.

The second attachment suit was sent on change of venue to Macon County, where it was tried and judgment rendered in favor of the defendant Richmond. The case was appealed to this court, was reversed and remanded and is reported in 235 Mo. 532.

That case was again tried in the Macon County Circuit Court, January 13, 1912, and at the close of the defendant's evidence the plaintiff took a nonsuit and the attachment was dissolved. On the same day a third suit on the same note was brought in the Sullivan County Circuit Court, and the same four hundred acres of land were attached. This was taken on change of venue to Grundy County. There a peculiar proceeding was had. One of the sureties on the note, Amon Richmond, had been adjudged insane and was represented by defendant in the suit by a guardian. On motion of the guardian he was granted a separate trial. The trial proceeded against the defendant Henry Richmond, and judgment was rendered September 29, 1913, as stated.

In order to support its position that a fraudulent purpose attended the sale of Richmond's property, of which defendants Morris and Meeks had notice, plaintiff offered evidence attempting to show that when the conveyance by Richmond to Morris was made, eight days after the first attachment suit was dismissed and five days before the second was brought, Morris knew of the existence of the seven-thousand-dollar note and of the suit on it; that about the same time, Richmond sold the remainder of the land, a hundred and twenty acres, to his son Jesse Richmond; that he sold his

personal property, including sheep and cattle, to other persons at the same time, and that Morris knew he was making disposition of his other property. It was further shown that the defendant Richmond, of the proceeds if the land, gave his wife nearly two thousand two hundred dollars, and gave his daughter various sums of money.

It was also shown by appellant that Morris was not a land buyer. He was seventy years old, too old to farm; that the trade was suggested to him and accepted by him on very brief notice, without looking at the land. Other facts of that character were proven to indicate the improbability of his caring to purchase the farm on his own account. He borrowed the entire fifty-six hundred dollars to pay for the land from the First National Bank. One Ike Guinn, president of the bank, and one Johnson, a saloonkeeper, who was a director of the bank, were sureties on his note and there seemed to be an effort on the part of plaintiff to connect the officers of the bank with the deal.

On the other hand, the defendant Morris testified that he was worth about eight thousand dollars at the time; that he had two thousand dollars stock in the First National Bank, and about eight hundred dollars in cash; so that the loaning of that amount of money to him was not so extraordinary.

Evidence also was offered by plaintiff to show that the land, two hundred and eighty acres, was worth from thirty to forty dollars an acre. Eight witnesses swore to values varying between those sums; all or nearly all of whom, however, had some connection with the plaintiff bank.

Eleven witnesses, sworn on behalf of defendant, put the value of the land at from seventeen to twenty-five dollars per acre, a majority of them placing it at twenty dollars per acre, or at from twenty to twenty-five dollars an acre.

Appellant showed that the seven-thousand-dollar note was not due at the time the first suit was brought on

it, nor at the time it was dismissed on the third day of January, 1906; and attempted to show that Morris knew' it at the time he bought, and knew that the second suit was instituted the day after the note fell due.

Morris testified that he didn't know that the suit on the seven-thousand-dollar note was dismissed because it wasn't due; that he had been over the land a few times a good while ago; that when the trade was first suggested to him he said he would give twenty dollars an acre for it, provided he could get the money. It was then that Johnson and Guinn agreed to see that he got the money and went on his note at the bank. He also stated that he would buy if it showed up all right. He knew there was a judgment for three thousand, two hundred and eighty dollars against the land in favor of the Milan Bank, which would have to be paid, and he had seen in the papers that a suit brought by the bank against Richmond had been dismissed "with leave to draw the note." He consulted an attorney before closing the deal and inquired whether Richmond could dispose of his property without being hampered in any way. He was told by his attorney who examined the record that it was all right. He explained that he did not understand the land had been attached. He only knew a suit had been brought and had heard that a suit was dismissed. His attorney said something to the effect that the suit might be instituted again. It was shown by plaintiff that when Meeks bought the land from Morris he took a bond from Morris to protect his title. This, however, was after the land was attached in the second suit and that suit was then pending.

When the trade was closed between Morris and Richmond, Morris drew his check for three thousand, four hundred dollars and seventy-seven cents, payable to the circuit clerk, in payment of the judgment and interest which the Milan Bank held against Richmond and gave his check for the balance, two thousand, one hundred and ninety-nine dollars and twenty-three cents,

to Richmond. The clerk retained the costs out of the amount paid to him, about forty dollars, and paid the balance to the bank.

The plaintiff's case is made out, so far as Morris is concerned, upon the testimony of Morris. His desposition was taken February 6, 1906, in the case of Milan Bank v. Richmond, probably when that suit was first brought; the plaintiff offered that deposition in evidence. His testimony given on a trial of the case of Milan Bank v. Henry Richmond, September 17, 1907, was also read in evidence by the plaintiff. His deposition was taken in the present case April 22, 1915, and that deposition was offered in evidence by the plaintiff. In each of these statements, where Morris testified at wide intervals, extending from 1906 to 1915, he told substantially the same story and made substantially the same explanations in regard to the transaction. The three statements differ from each other only in unimportant details and in some points of recollection as to sequence of events of matters not important. It seems from his testimony that he was served with a garnishment after the second attachment suit was brought. After he acquired the land he says he looked into the matter further and learned most of what he knew about Richmond's condition. The evidence tends to show that he did not know Richmond was insolvent at the time he bought the land from him, nor that Richmond was giving property away to his wife and son.

The plaintiff has placed itself in a position such that it cannot now question the validity of the sale of the property by Richmond to Morris. When the sale was made the plaintiff bank received of the purchase money three thousand four hundred dollars—more than three-fifths of the total purchase price. It is not contended anywhere that the officers of the bank did not know exactly where the purchase money came from. The weight of the evidence supported a finding that the land was sold for its full value. The plaintiff's

judgment was a first lien on the land. The conveyance by Richmond could not be made so as to invest Morris with title without the payment of that judgment. The purchase money was paid through the clerk of the court, just as it would have been if the plaintiff bank had caused the sale to be made under execution. That is to say, the payment of the plaintiff's judgment was in effect a forced payment. The entire disposition of the proceeds was exactly the same as if the plaintiff had caused execution to be levied and had the land sold, because in that case the surplus would have been paid to Richmond, defendant, as it was paid to him, Three days after receiving the proceeds of that sale the bank brought its suit by attachment, on the ground that the sale was fraudulent. Subsequent suits, including the present one, proceeded upon the same theory. Thus plaintiff attempts to avoid a sale of which it obtained the proceeds. It will be noted that the plaintiff bank by its petition here seeks to have its judgment, twelve thousand dollars and over, made a lien against this land. The amount is more than enough to absord the entire present value of the land. It appears also that Morris, the purchaser, was served with a garnishment in that proceeding, probably to reach the surplus proceeds which he paid to Richmond. This is not clear in the record, but it is inferable from what does appear.

The principle applicable to this is sometimes referred to as estoppel and is sometimes called ratification.

"Where one having the right to accept or reject a transaction takes and retains benefits thereunder, he becomes bound by the transaction and cannot avoid its obligation or effect by taking a position inconsistent therewith." [16 Cyc. 787; 9 C. J. 1198-1199.]

It was said by this court in the case of Austin v. Loring, 63 Mo. 19, l. c. 22:

"No person will be allowed to adopt that part of a transaction which is favorable to him, and reject the rest to the injury of those from whom he derived the benefit. When those who are entitled to avoid a

sale adopt and ratify it, equity will estop them from afterwards setting it aside.''

That was said where a defendant in execution, knowing of a defect in the service on him, stood by and permitted his land to be sold in satisfaction of his debt and demanded and received the surplus proceeds. ''By his action he ratified the sale,'' and estopped himself from laying any claim to the land.

In the case of Chase v. Williams, 74 Mo. 429, suit was brought for the purpose of setting aside a sale under a deed of trust and redeeming the property on the ground that the sheriff, acting as trustee, had no authority to sell. The circuit court found the issue in favor of the defendant, and plaintiff appealed, but in the meantime procured an order for the surplus proceeds of the sale to be paid to them. It was held on appeal that, by finding the motion and procuring an order to have the proceeds of the sale paid, the plaintiff had ratified the sale and therefore would not be heard on appeal to question its validity. [74 Mo. l. c. 437.]

Boogher v. Frazier, 99 Mo. 325, l. c. 330, is where a deed of trust securing three notes was foreclosed by sale at the instance of the owner of two of the notes. The owner of the third note sued the trustee, the *cestui que trust,* and the purchaser at the trustee's sale for the proceeds of the sale and recovered judgment against them for the amount of his debt. Having failed to collect all of his judgment he brought suit in which he claimed that the sale was void and passed no title. He was estopped to deny the validity of the trustee's sale as against the purchaser. That case is very similar in principle to the present case. Here the plaintiff had its security (a judgment lien) on the land for the greater part of the land's value; the land was sold for its full value and plaintiff obtained full payment of its judgment out of the proceeds. It could not, therefore, question the validity of the sale as against the purchaser of the land. Having collected one judgment from a sale of the land it could not cause

its resale to satisfy another judgment on the ground that the first sale was invalid.

Where tenants in common on a partition sale receive the proceeds due them as partitioners, they cannot afterwards question the validity of the sale. [Hector v. Mann, 225 Mo. l. c. 245-48.] See, also, as pertinent to the point under consideration, Proctor v. Nance, 220 Mo. 104, holding that where a landowner takes the surplus money arising from the sale of his land for taxes he ratifies the sale and is estopped to deny its validity (l. c. 115). To the same effect in principle are Lawson v. Cunningham, 204 S. W. 1100, l. c. 1105; Sebree v. Cassville & Western Ry. Co., 212 S. W. 11, l. c. 16; Railroad v. Bridge Co., 215 Mo. 286, l. c. 296; Nanson v. Jacob, 93 Mo. 331, l. c. 346; State ex rel. v. Citizens Bank, 274 Mo. l. c. 73; Henderson v. Koenig, 192 Mo. l. c. 716; Platt v. Francis, 247 Mo. l. c. 310; Hayes v. Manning, 263 Mo. l. c. 46.

At the time of the sale the bank had a right to bring its attachment suit and seek to subject the equity of Richmond to the discharge of its other note. It didn't do that then but stood by and saw the title pass and took the first proceeds of the sale in satisfaction of its judgment; that is, it elected to ratify the sale.

With this view of the case it is unnecessary to consider the other propositions presented in the briefs. The judgment is affirmed.

*Railey* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.