Katie GABBERT and Lilly Belcher, Respondents,

v.

Thomas J. IRELAND et al., Appellants.

No. 47493.

Supreme Court of Missouri,

Division No. 2.

July 11, 1960.

 

Don C. Carter, Sturgeon, for appellants.

Geo. S. Thompson, Salisbury, for respondents.

BARRETT, Commissioner.

In this action the trial court has found that the plaintiff sisters, Mrs. Gabbert and Mrs. Belcher, each own an undivided one-eighth interest in a 79.05 acre tract of land in Chariton and Howard Counties and accordingly the court has quieted the title and possession by decreeing that the plaintiffs and the defendant children and grandchildren of a deceased uncle of the plaintiffs are tenants in common. The defendants have appealed from the decree and contend that in the circumstances of this record the plaintiff sisters have no interest in the land of their uncle and that, therefore, the judgment should be reversed.

These are the background circumstances in which the litigation arose: In 1901 Thomas Ireland, a widower, owned a northeast quarter section of land in Chariton and Howard Counties consisting of this tract of 79.05 acres and another adjoining tract of 68.75 acres. On March 13, 1901, reserving to himself a life estate, Mr. Ireland executed two warranty deeds, one conveying "an undivided one half interest" in the quarter section to his son, William J. Ireland,—the father and grandfather of the defendants—and the other conveying "an undivided one half interest" in the quarter section to his daughter, Daisy M. Blackwell, the mother of the plaintiffs. The undivided one-half interest conveyed to the son was in fee simple, other than the reserved life estate there were no restrictions or limitations in the deed to the son, William J. Ireland. But the undivided one-half interest conveyed to the daughter was not in fee simple; in the first place, the conveyance was to *"Daisie M. Blackwell and the heirs of her body."* And in the second place, while the conveyance was of an undivided one-half interest there were limitations and

other provisions in her warranty deed; the one-half interest was "to be held and enjoyed by her to her sole and separate use free from any interference or control of her present or any future husband, and in the event of her death without heirs of her body then living, then all the right title and interest hereby conveyed shall go to and vest in my son William J. Ireland to be held and enjoyed by him and his heirs in fee simple forever." And finally Mr. Ireland, after reserving a life estate in himself, provided in this paragraph of the deed "that *when a division of said land shall be made between the joint owners,* allowance shall be made to said William J. Ireland for the value of the improvements he may have placed thereon." On March 21, 1901, eight days after executing these deeds, Thomas Ireland died and on February 1, 1902, William J. Ireland and his wife executed a quitclaim deed by which they conveyed the north 68.75 acres to his sister, Daisy M. Blackwell. On the same day Daisy M. Blackwell and her husband executed a quitclaim deed by which they conveyed to her brother, William J. Ireland, the south 79.05 acres. Thereafter, for the next fifty-three years and until his death on July 14, 1955, William J. Ireland, made improvements and lived on the south 79.05 acres. He died intestate and the defendants are his sons, daughters and grandchildren of a deceased daughter. Likewise thereafter, at least until 1932, Daisy M. Blackwell, her husband and family (until the daughters married) lived on the north 68.75 acres known as "the home place." On December 18, 1926, two separate deeds of trust, apparently securing the same "first mortgage real estate bond" in the sum of $1,375, were executed covering the north 68.75 acres; in one Daisy and her husband, Joseph, conveyed or mortgaged "Sixty-eight and 75/100" acres and in the other Daisy's children and their husbands, including the plaintiffs, conveyed in trust "All of our undivided interest." The $1,375 note was signed by Daisy and her husband, Joseph, by Katie Weldon Blackwell—now Katie

Gabbert—as well as by Lilly Belcher and all of Daisy's children. On November 12, 1932, Daisy and her husband and all their children, including these plaintiffs, joined in a warranty deed in which they conveyed their "undivided interest" in the 68.75 acres to the husbands of these plaintiffs, John Gabbert and Jesse Belcher, "An undivided one half interest each." On the same day, November 12, 1932, the Gabberts and the Belchers executed a deed of trust on the property securing an $800 note to the Salisbury Savings Bank. On November 13, 1933, the Belchers conveyed their one-half interest in the 68.75 acres to John Gabbert. As stated, William J. Ireland died on July 14, 1955, and Daisy Blackwell, the mother of the plaintiffs, died March 31, 1952, and this suit was instituted on January 13, 1956.

In 1901 Thomas Ireland transferred to his son, William J. Ireland, the fee simple title to an undivided one-half interest in the northeast quarter section but by the deed to "Daisie M. Blackwell and the heirs of her body" he conveyed to his daughter a life estate only with contingent remainders in her children in the other undivided one-half interest in the quarter section. V.A.M.S., Secs. 442.470, 442.490. The remaindermen did not join in the 1902 deed to their uncle (Grimes v. Rush, 355 Mo. 573, 197 S.W.2d 310) and standing alone the deed from their life tenant mother to her brother, purporting to convey to him the south 79.05 acres, would not affect their remainder interest and upon the death of their mother fifty years later they would of course be entitled to assert their remainder interest. Bullock v. Porter, 365 Mo. 572, 284 S.W.2d 598; Stockwell v. Stockwell, 262 Mo. 671, 172 S.W. 23; Emerson v. Hughes, 110 Mo. 627, 19 S.W. 979; 33 Am.Jur., Sec. 263, p. 741. But the 1901 deed from the father and the 1902 conveyance by the sister to her brother were not the only facts and the question here is whether in all the circumstances the plaintiff remaindermen by reason of estoppel, ratification or general equitable

principles are now precluded from asserting their remainder interest in the south 79.05 acres. 33 Am.Jur., Secs. 191–193, pp. 664–668; 31 C.J.S., Estates § 51, p. 68; Rhodus v. Geatley, 347 Mo. 397, 147 S.W.2d 631.

One of the relevant circumstances is the deed itself (the deed creating the life estate and the remainder) and the manifest intention and purpose of the grantor, Mr. Ireland. Bullock v. Porter, 365 Mo. loc. cit. 577, 284 S.W.2d loc. cit. 601. While he parted, subject to his life estate, with his entire title in the land and created a tenancy in common in his grantees it is obvious from the deed to his daughter, "when a division of said land shall be made between the joint owners," that a division of the quarter section between the grantees was contemplated at some future date. And, of course, the son by conveying his undivided one-half interest in the 68.75 acres to his sister, Daisy, effectuated that purpose in part. The sister's conveyance to him of the south 79.05 acres was ineffective for that purpose but is indicative of a mutual intention to carry out the purpose expressed in the deed. It is also obvious from the terms of both deeds that the son was not to have a lesser estate in the quarter section in either quantum or quality, "allowance shall be made to said William J. Ireland for the value of the improvements he may have placed thereon"; and the conveyance to him was of an undivided one-half interest in fee simple and in the event of the death of Daisy without heirs of her body "all the right title and interest" was to vest in his son. Not that these factors alone would override the force and effect of the conveyance but as of now the son, William, has wound up, not with an individed one-half interest in the quarter section or with the fee simple title to the south half, but with a half interest in approximately one half of the quarter section while his nieces have turned up with the fee simple title to the north one half of the quarter section and a one-half interest in the south one half—this net result is certainly contrary to the plainly expressed intention of the creator of the estates. In this connection the remaindermen plaintiffs by joining in the conveyance with their mother to their respective husbands and finally to Mrs. Gabbert's husband have contributed to and made possible this unintended result. It does not appear that there was any consideration for the deeds between brother and sister other than that expressed in the deeds, "the Exchange of interest in lands" and $1.00, and this too indicates an attempt to carry out the expressed intention of their father.

Then too the remaindermen nieces, Mrs. Gabbert and Mrs. Belcher, did not sit idly by and for fifty years passively await the termination of the life estate (Hall v. French, 165 Mo. 430, 65 S.W. 769), on December 18, 1926, they signed the $1,375 note and in 1932 the $800 note and together with their husbands signed and executed the deeds of trust covering the north 68.75 acres. They testified that they did not receive any of the consideration for either of these notes (Summet v. City Realty & Brokerage Co., 208 Mo. 501, 106 S.W. 614), Mrs. Gabbert indicated that the $800 note was a renewal of the balance due on the $1,375 note and said, "We borrowed the money when we bought the place to pay that note off." But, of course, they could not have made either the $1,375 or $800 loans and executed the deeds of trust except for the fact that their uncle had effectively conveyed his undivided one-half interest in the 68.75 acres to his sister. Aside from the detriment to the brother in parting with his one-half interest in the north 68.75 acres, their mother and these plaintiff remaindermen have the benefit of a fee simple title to that part of the quarter section and by their unequivocal acts and conduct over the years have acquiesced in the result. Assuming, as Mrs. Gabbert says, that she and her sister did not receive any part of the proceeds of the loans and are not estopped for that reason (Milan Bank v. Richmond, 280 Mo. 30, 217 S.W. 74, 9 A.L.R. 353), all the circumstances of this

record considered it would certainly be inequitable for them to now claim and assert their remainder interests. 33 Am. Jur., Secs. 191–193, pp. 664–668; McBreen v. McBreen, 154 Mo. 323, 55 S.W. 463; Rhodus v. Geatley, supra. Therefore the judgment is reversed and the cause remanded with directions to enter a judgment in accordance with this opinion.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., adopted as the opinion of the Court.

LEEDY, P. J., and EAGER and STORCKMAN, JJ., and HUNTER, Special Judge, concur.