T. M. MCCONNELL *et al. v.* J. S. BELL *et al.*

(*Knoxville.* September Term, 1908.)

1. **PARTITION.** Life tenant is not entitled to a sale for partition as against remainderman.

   A life tenant cannot maintain a bill against the remainderman for a sale of the land for partition or division of the proceeds, nor for partition in kind. (*Post, p.* 206.)

   Case cited and approved: Holt v. Hamlin, 120 Tenn., 496.

2. **SAME.** Same. Life tenant's right to assent to a sale for partition does not entitle him to force such sale as against remainderman or reversioner.

   While an estate for life in the whole of the premises does not and cannot enter into the scheme of partition in kind at all, yet it may enter into the scheme of a sale for partition or division of the proceeds, with the assent of the life tenant; but this rule does not mean that a life tenant, by consenting to a sale of the property through a bill filed by him for that purpose, can force a sale against the wishes of the remainderman or reversioner. It means that a remainderman or reversioner may file a bill against his cotenants in remainder or reversion and against the life tenant for a sale of the land for partition or division of the proceeds, and, with the assent of the life tenant, have the whole estate sold, if for the benefit of all. (*Post, pp.* 208, 209.)

   Code cited and construed: Secs. 5265-5268 (S.); secs. 4246-4249 (M. & V.); secs. 3505-3508 (T. & S. and 1858).

   Case cited and approved: Holt v. Hamlin, 120 Tenn., 496.

3. **SAME.** Same. Same. Statute attempting to give life tenant a right to force a sale for partition as against a remainderman or reversioner without his assent is unconstitutional.

   The statute (Acts 1907, ch. 403) entitling the life tenant to a sale of the whole estate in the land for partition and division

McConnell v. Bell.

of the proceeds between himself and the remainderman or reversioner, when the property is so situated that the life estate cannot be made to yield a support, in its existing condition, to the life tenant, and when it is to the interest of said life tenant that said land be sold for distribution, attempts to give the life tenant a right to a sale of the land of the remainderman or reversioner, without his assent and without the right to interpose any defense, and is invalid as depriving the remainderman or reversioner of his property without due process of law and contrary to "the law of the land." The statute undertakes to establish a rule whereby one private citizen can use the property of another private citizen for his benefit without the consent of the latter. The statute is, therefore, unconstitutional and void. (*Post, pp.* 206, 207, 209, 210.)

Constitution cited and construed:    Art. 1, sec. 8 (State); 14th am. (U. S.).

Acts cited and construed:    Acts 1907, ch. 403.

4. **SAME.** Same. Same. Same. Statute depriving one of property without his consent for the benefit of another is not saved from its unconstitutionality by any classification in legislation.

The said statute, the substance of whose provisions is stated in the foregoing headnote, does not involve a question of classification under our constitution (art. 11, sec. 8); for there can be no reasonable classification in legislation by which one man can without his consent, be deprived of his property for the benefit of another man. Such statute cannot be saved from its such unconstitutionality under section 8 of the first article of our constitution by reason of any classification made under the 8th section of the eleventh article thereof. (*Post, pp.* 210, 211.)

Constitution cited and construed:    Art. 1, sec. 8; art. 11, sec. 8.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County.—W. D. SPEARS, Special Chancellor.

CLIFT & COOKE, for McConnell.

COOKE & SWANEY and F. A. NALL, for Bell.

MR. JUSTICE NEIL delivered the opinion of the Court.

The bill in this case was filed by T. M. McConnell and his wife, Mrs. Mary McConnell, and against his daughter, Miss Queenie McConnell, at that time a minor, under twenty-one years of age, and against J. S. Bell.

The bill alleges that prior to the involuntary bankruptcy proceedings which were instituted against T. M. McConnell in the year 1902-03, he was the owner of certain real estate situated in the Fifth civil disctrict of Hamilton county, being a part of block 1, in the "L. E. and D. P. Montague" addition to Highland Park—the lot being minutely described in the bill; that in said bankruptcy proceedings, and by a regular meeting of the creditors of the complainant McConnell, held on the 17th day of January, 1903, this property was sold to defendant J. S. Bell, subject to the homestead of complainants and their minor child, the defendant, Miss Queenie McConnell, in a certain portion of the said property—this portion being likewise described in the bill; that this sale was confirmed by the decree of the United States district court for the southern division of the eastern district of Tennessee, on the 17th day of January, 1903, and the trustee, under orders of the court, issued a deed to J. S. Bell, which was duly recorded.

McConnell v. Bell.

It is further alleged that complainant T. M. McConnell is about sixty-six years of age, and that Mrs. McConnell is about fifty-eight or fifty-nine years.

It is also alleged that the real estate referred to consists of some vacant lots in the territory recently annexed to Chattanooga; that the taxes on the property were charged to the complainants T. M. McConnell and wife, on account of their being life tenants; that these taxes are burdensome; that they cannot rent the property, nor can they sell their interest in it, nor can they handle the property in any way so as to derive an income from it on account of the fact that their life tenancy is such an uncertain estate, and the property is wholly unproductive, and it cannot be made to yield any income in its present shape.

The bill then continues:

"They show unto your honor that it is manifestly to the interest of the minor defendant, Queenie McConnell, that said property be sold for partition among the life tenants and remainderman, because, in its present shape, to call it a homestead inuring to her benefit is a mockery, and unless it is partitioned it is an expense which her parents can ill afford to bear, instead of a benefit, and if the value of the homstead is set apart in cash, it can be invested so as to be of lasting benefit to her as well as to her parents. Said property cannot be made to yield a support in its present existing condition, and it is to the interest of the life tenants that said land be sold for distribution.

McConnell v. Bell.

"Complainants have made every reasonable effort to induce defendant Bell to consent to a partition of same, or to a sale for partition, or to make an offer to buy or sell; but they show to your honor that he is a very rich man, and will not consent to any arrangement whereby they can get any benefit from said property commensurate with its value as long as he can force complainants to pay all taxes on said property, and observe it constantly increase in value, until upon the falling in of complainants' life estate it shall become his property in its entirety.

"Complainants show to your honor that said property is not susceptible of partition in kind, and that they are entitled to have the same sold for partition, and the value of their life estate ascertained and paid over to them out of the proceeds of said sale. Complainants are the owners of a life estate in the portion above described as having been set apart for that purpose, and defendant Bell is the owner of the remainder of the same."

The prayer of the bill is for a decree ordering the land sold for partition, or division of proceeds, in bar of the equity of redemption, and that a reference to the clerk be had to ascertain the value of the life estate of the complainants in the portion of the land set apart as homestead, and also the value of the remainder interest, and that the proceeds be divided as to the court shall seem just and equitable.

A demurrer was filed to the bill, which was overruled, and thereupon the defendant Bell answered. He admitted that the real estate described in the bill was vacant property, and was vacant at the time the homestead was assigned. He admitted that the complainants were paying the taxes, as the law required of the life tenants, but denied that the property could not be rented, or used so as to produce an income. He also denied that the complainants could not sell an interest in the real estate, or handle it in any way so as to derive an income therefrom. It is averred in the answer that the defendant offered to pay the complainants $550 for their interest in the land, which was refused.

Continuing, the answer says:

"Respondent denies that said property is not susceptible of partition in kind, and that complainants are entitled to have said property sold for partition, and the value of said homestead ascertained and paid over to them in money out of the proceeds of said sale. Respondent, for further defense to this cause, says that chapter 403, p. 1371, of the Acts of 1907 of the general assembly of Tennessee is unconstitutional, null, and void for the reasons set out in the demurrer heretofore filed, as being in conflict with the constitution of Tennessee, and that it is also null and void because in conflict with that provision of the fourteenth amendment of the constitution of the United States, which prohibits the States from passing any law depriving any person

of life, liberty, or property, without due process of law, and he pleads and relies upon said provision of said amendment to the constitution of the United States as a complete defense to this action."

Several sections of the constitution of Tennessee are referred to by number in the demurrer, but they need not be specially mentioned here, except that one which is mentioned by its substance, and which is equivalent in part to the fourteenth amendment, to the effect that "no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land." Article 1, sec. 8.

The chancellor appointed a special commissioner, and directed him to report as to the ages of the complainants, and their minor daughter, and also "whether or not said property can be made to yield a support in its existing condition to said homesteaders, the complainants; whether or not it is to the interest of said life tenants that said land be sold for distribution."

The commissioner reported that complainant McConnell was seventy-three years of age, and Mrs. McConnell fifty-eight; that the property could not be made, in its existing condition, to yield a support to the said homsteaders; and that it was manifestly to their interest (life tenants) that the said land be sold for distribution "for the reason . . . that the property cannot be made to yield a support in its existing con-

McConnell v. Bell.

dition to the complainants." He also reported that Miss Queenie McConnell was, at the time the report was made, twenty-one years of age, and therefore had no interest in the homestead.

There were various exceptions filed to this report by the defendant; but, in the view we take of this matter, it is not necessary to go into the particulars of these exceptions.

The chancellor overruled the exceptions, and confirmed the report of the special commissioner, with the exception that he placed the age of Mrs. McConnell at fifty-nine years, instead of fifty-eight. Thereupon he decreed that complainants were entitled to have the real estate sold, because it was to the interest of the life tenants that it should be sold, since it could not be made to yield a support to them in its existing condition. Accordingly, the land covered by the homestead was sold and purchased by one W. A. Burns, at the price of $2,075, and the sale was confirmed.

The court then ordered a reference to the special commissioner to fix the value of the life estate. He made a report, which, on exception, was modified by the chancellor so as to decree to the complainants $1,025, having previously deducted from the whole fund $70.32, costs. Thereupon the defendant appealed in due form to this court, and has assigned errors.

In the view we take of this case, there are only two questions that need be considered.

First, it is insisted by the complainants that the homesteaders are life tenants, and, as such, they have the right to maintain a bill against the remainderman to have the property sold for division of proceeds, regardless of the act of 1907, to be presently mentioned; secondly, that if they are mistaken in this view, they are entitled to have this relief under the act just referred to.

The first point is fully covered by the case of *Holt* v. *Hamlin,* 120 Tenn., 496, 111 S. W., 241. It is there held that such a bill cannot be maintained. This decision is attacked in the brief and criticised at some length. We need only say that the decision referred to was reached after full argument of counsel, and an exhaustive examination of the questions involved by the court, and we are content to let the decision rest as it now stands, being fully satisfied of its correctness in all respects.

As to the second point: It is necessary that we should set out the act. It reads as follows:

"An act to amend section 3305 of the Tennessee Code of 1858, with reference to sales of real estate for partition and distribution.

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that section 3305 of the Tennessee Code of 1858, be, and the same is, hereby amended, so as to provide that hereafter chancery courts in this State shall have jurisdiction upon the application of any person having an interest in real estate, whether as tenant in common, by courtesy, in

McConnell v. Bell.

dower or in homestead, to sell for distribution among the parties in interest any lands owned by the tenants in common, or in which any person has a life estate, as a tenant in dower, in courtesy, or a homestead interest in the same, and may order the same sold in the same way as now provided by law for the sale of lands held by tenants in common; provided, however, no decree shall be passed ordering a sale of lands in which any party has an interest as tenant in dower, by courtesy, or as a homestead, unless it be alleged and shown that the property is so situated that it cannot be made to yield a support in its existing condition to said tenant in dower, courtesy, or homestead, and that it is to the interest of said life tenant that said land be sold for distribution; and, provided further, that in case the applicant's or petitioner's interest be a homestead right, it must be alleged and shown that said sale would be to the interest of any minors having any interest in the homestead right.

"Sec. 2. Be it further enacted, that when sold, the proceeds of the sale shall be apportioned between the said life tenants and reversioners and remaindermen according to the respective values of their interest, as ascertained by the court.

"Be it further enacted, that all laws and parts of laws in conflict with this act be, and the same are, hereby repealed, and this act take effect from and after its passage, the public welfare requiring it."

McConnell v. Bell.

Section 3305 of the Code of 1858, referred to in the above act, is as follows:

"The court may with the assent of the person entitled to an estate in dower, or by courtesy, or for life, to the whole or any part of the premises, who is a party to the proceedings, sell such estate with the rest."

The next section reads:

"If such person is incapable of giving assent, the court may determine, under all the circumstances, and taking into view the interests of all the parties, whether such estate ought to be excepted from the sale or sold."

The next section reads:

"When such interest is sold, the value thereof may be ascertained and paid over in gross or the proper proportion of the fund invested and the income paid over to the party during the continuance of the estate."

The next section reads:

"If the person entitled to any such estate in dower, by the courtesy, or for life, be unknown, the court may determine whether the estate shall be sold or not, as in the case of persons under disability, and in the event of the sale, make such order for the protection of the rights of such persons in the same manner as far as may be as if the person were known and had appeared."

In the case of *Holt* v. *Hamlin*, supra, commenting upon these sections, it is said: "When we compare these sections with the preceding ones which we have quoted, it is observed that, while an estate for life in the whole of the premises does not and cannot enter

into the scheme of partition at all, yet it may enter into the scheme of a sale for division, but only in a qualified way. This can only be with consent of the life tenant, when that person is one *sui juris.* When the life tenant is a person under disability, the court will determine, under all the circumstances, and taking into view the interests of all the parties, whether such estate ought to be excepted from the sale or should be sold.

The same rule applies when the life tenant is unknown. This does not mean that a life tenant, by consenting to a sale of the property through a bill brought by him for that purpose, can force a sale. We do not doubt that any one of the owners in remainder or reversion could bring a bill for sale of property against his cotenants in reversion or remainder and the life tenant, and with the assent of the latter, if a person *sui juris,* have the land sold, if for the benefit of all; nor do we doubt that, where the life tenant is a person under disability, that person could be made a defendant in the supposed bill and the court would order the land sold if for the benefit of all, even though the life tenant should be incapable of giving assent, because of disability, or because not known."

It is observed from the foregoing that a bill against the life tenant, under the circumstances above mentioned, can be maintained by the reversioners or remaindermen for the sale of a life estate only with the

121 Tenn.—14

assent of the life tenant. Now the amendment which the above-quoted act purports to make is to give the life tenant the right to sell the land of the remaindermen, or reversioners, without the assent of the latter. The only inquiry under this new act is whether it is for the benefit of the life tenant. The interest of the remaindermen, or reversioners, as the case may be, is to be disregarded entirely. In other words, the land of the remaindermen or reversioners is to be sold according to this act, because it is to the interest of a third party, rather than to their own interest. The remainderman may be brought before the court under this act, and his property be sold without his having any right to interpose any defense whatever. The only question he can contest is one in which he has no interest, that is, whether it would be to the advantage of the life tenant to have the property sold. He is brought before the court formally, but without the right to defend in his own interest. This is not due process of law, nor does it come within the meaning of the expression, "the law of the land." It is not a question of classification under article 11, section 8; but there can be no circumstances under which we can imagine a reasonable classification which would bring a party before the court for the purpose of disseizing him of his land, at the same time denying him the right to defend in his own interest. An act would be equally reasonable which would justify the filing of a bill to sell the land of one man in order to remove

McConnell v. Bell.

an obstruction to the view of another man; such obstruction existing by reason of houses on the land of the party proceeded against. An act would be equally reasonable which would authorize the selling of the land of one man in order that another might have a river front. In short, the act in question undertakes to establish a rule whereby one private citizen can use the property of another private citizen for his benefit without the consent of the latter.

We are of the opinion that the act is unconstitutional and void.

It results that the decree of the chancellor was erroneous, and must be reversed, and the bill dismissed.