LOUISA J. CARSON et al. v. GEORGE T. HECKE et al., Plaintiffs in Error.

Division One, June 2, 1920.

1. **COURTESY: Partition: Interest in Proceeds.** A husband, entitled to curtesy in his wife's land, but not made a party to the partition proceeding and only the interests of the heirs being sold, has no interest in the proceeds; and if he voluntarily on his own motion, comes into court and asks that his curtesy be computed and he be awarded the value thereof out of the proceeds, his prayer cannot be granted. He has a lifetime use to the land, but he is entitled to no part of the proceeds of the sale thereof.

Carson v. Hecke.

2. ———: ———: ———: Estoppel. Acceptance in lieu of curtesy by the husband of a portion of the proceeds of the sale of the wife's land in a partition suit in which the heirs alone are parties, will estop him from asserting his curtesy interest in the land so sold.

3. PARTITION: Necessary Parties. All persons having an interest in lands must be made parties to the partition proceedings. The statute requires that "every person having any interest in such premises, whether in possession or otherwise" shall be made parties. The rigorous rule applied in chancery regarding the parties is to be followed in partition suits.

4. ———: ———: Curtesy. If the husband has curtesy and, though he has not been made a party in the partition suit between the wife's heirs, the sale should be set aside, and either he be brought in or the suit be dismissed.

5. ———: During Curtesy: Consent. A tenant for life, whether by curtesy or otherwise, cannot compel partition against remaindermen and reversioners, nor they against him, and as between their respective estates partition is not available except by consent of their respective owners. As between co-tenants for life, the right of partition extends only to a division between them of their respective estates; as between remaindermen and reversioners, the right extends to a partition of their estates, subject to the life estate. But where the husband has a life time curtesy interest in all of his wife's lands, and nothing more, he cannot, under the statute, compel partition against her heirs, nor they against him, and there can be no partition unless all the parties consent.

6. ———: ———: ———: Minors. Where the lands are burdened with a life estate and some of the heirs are minors, there can be no partition until the life estate terminates or the minors become of legal age. For where the life estate exists, there can be no partition without the consent of all the parties, and minors cannot consent, nor can their guardians consent for them.

7. ———: ———: ———: Sale: Statutes. Section 2612, Revised Statutes 1909, declaring that "if in any case, from the nature and amount of the property sought to be divided and the number of the owners, it shall be apparent to the court, that the assignment of dower, if any, and partition thereof, in kind, cannot be made without great prejudice to the owners, an order of sale may be made," applies, where one of the parties is a life tenant and the others remaindermen or heirs, only when all the parties consent to partition.

8. ———: ———: ———: Mortality-tables Statutes. Section 8499, declaring that "if the court in any legal proceedings adjudge or

decree a gross sum to be paid in lieu" of a lifetime interest, according to the mortality-tables, does not create a new right to partition, but applies only when partition can be maintained under the partition statutes, and under them no partition can be maintained to partition lands burdened with a life estate without the consent of all the parties, and if there are minors they cannot consent.

Appeal from Chriton Circuit Court.—*Hon. Fred Lamb, Judge.*

REVERSED AND REMANDED.

*S. A. Davis* for plaintiffs in error.

(1) The court erred in allowing John S. Lane to intervene or become a party defendant in this case, because under the law if he was a tenant by the curtesy, his tenancy attached at the birth of Emittie Roesen, which was prior to 1879, and he as such tenant had no interest that could be partitioned, and was not a necessary party to the partition suit, and his application should have been denied. Atkinson v. Brady, 114 Mo. 200; Hayes v. McReynolds, 144 Mo. 348. (2) Sections 8499-8500 and 8501, known as the Mortality Tables, was passed first in 1903 and amended in 1905. Lane's right, if he had any, was vested in him at the birth of Emittie, prior to 1877, and this mortality table could not be used for the purpose and as a basis for giving Lane a part of the proceeds of this sale, and the court erred in its judgment. Under the law, as cited above, Lane, if he had not forfeited his rights, would have been entitled to the possession of the property alone. Arnold v. Willis, 128 Mo. 145; Lete v. Bank, 115 Mo. 185; Vanata v. Johnson, 170 Mo. 269; Smith v. White, 165 Mo. 590; Teckenbrock v. McLaughlin, 246 Mo. 711; Graham v. Ketchum, 192 Mo. 15. (3) This Act of 1905 under which this allowance to Lane was made is not retrospective in its character, and does not apply to cases arising before 1889. Cases supra. (4) Since 1889, the tenant by the curtesy is about in the same condition as the widow with her dower, and his rights

can be measured in the same manner, but not his rights that accrued prior to 1889. Teckenbrock v. McLaughlin, 246 Mo. 711. (5) Interpleader forfeited his right to curtesy when he, without cause or excuse intentionally and wrongfully deserted his wife and child, and left the State and remained out of the State. If he had obtained a divorce for the fault of his wife it would have been a voluntary act, and he could not claim property rights in her real estate afterwards. Any act of Lane's which showed that he had voluntarily abandoned his property rights was sufficient to bar his curtesy. Doyle v. Rolwing, 165 Mo. 231; Phelps v. Walther, 78 Mo. 320; Musick v. Dodson, 76 Mo. 624; Zallagher v. Delargy, 57 Mo. 37; Rose v. Bates, 12 Mo. 33. (6) Lane by his act induced the purchaser and all other people interested in this piece of property to believe that he had no interest therein, and it is now too late for him to assert an interest. Snodgrass v. Emery, 66 Mo. App. 462; Spurlock v. Sproule, 72 Mo. 503; Acton v. Dooley, 74 Mo. 63; 16 Cyc. 774; 17 Corpus Juris, p., 435, sec. 57; 8 R. C. L. p. 404, sec. 17; R. S. 1909, sec. 2370.

GOODE, J.—This action was filed to have partitioned two parcels of land inherited by the parties as heirs of Annie E. Lane, who died intestate March 29, 1915. The facts of the case, up to the interlocutory judgment rendered by the circuit court, are stated well in that judgment, which, omitting caption, reads as follows:

"Now on this the 21st day of September, 1916, this (cause) coming on to be heard and it appearing that all of the defendants have been served by process except Perry Keith who has since entered his appearance as defendant in this cause by answer filed.

"And the court finds that it has jurisdiction of the subject and defendants herein.

"Wherefore the cause is submitted to the court upon the petition of plaintiff, the answer of Gilbert Lamb, as guardian *ad litem* of Emittie Roesen, a person of unsound mind, and answer of A. W. Johnson, guardian *ad*

*litem* of Lonnie S. Hecke, Ruby M. Hecke, Clara Z. Hecke, Lillie B. Hecke and Harry L. Hecke, minor heirs of Louis Hecke, deceased, and interpleader of Allie Drace, as administrator of Louis Hecke deceased, and the answer of Willie Hecke, Laura Hecke, George T. Hecke, Alice V. Hecke, Sarah Keith and Perry Keith, filed in this court.

"And the evidence of plaintiffs' witnesses in support thereof, all of which was heard, seen and considered by the court, and the court finds from the pleadings and evidence that Mrs. Anna E. Lane died on the 29th day of March, 1915, intestate, leaving as her sole heirs, George Hecke, Louis Hecke, Robert Hecke, Louisa J. Carson, Sarah W. Keith and Mrs. E. A. Roesen.

"That subsequent to the death of said Anna E. Lane, one of her said heirs, namely, Louis Hecke, died intestate, leaving surviving him as his sole heirs the following named parties, namely, his widow, Sophia Hecke, and the following named children: Lonnie S. Hecke, Ruby M. Hecke, Clara Z. Hecke, Lilie B. Hecke, Willie A. Hecke, Mamie Wilhelm, Leonora Rodgers, Rody G. Gotchalk, Denver Hecke, Theodore Hecke and Harry L. Hecke, and that Allie Drace has been appointed and qualified as administrator of the estate of Louis Hecke, deceased.

"The court further finds that said Annie E. Lane at the time of her death was the owner in fee simple of the following tracts or parcels of land; 90 acres, being 15 acres off the south end of 70 acres, the west side of the northeast quarter; 10 acres off the west side of the southeast quarter of the northeast quarter; also five-acre strip off the east part of the southwest quarter of the northeast quarter, and 60 acres being the east half of the west half of the southeast quarter and part of the west half of the east half of the southeast quarter, all of Section 32, Township 53, Range 19, Chariton County, Missouri.

"The court further finds that Louisa J. Carson, plaintiff, and George Hecke or his assignee Alice Hecke, Robert Hecke, Sarah W. Keith, Emittie Roesen are each entitled to one-sixth of said real estate and that the estate

of Louis Hecke, deceased, combined, are entitled to one-sixth part of said real estate.

"That plaintiff and said defendants are tenants in common and are severally entitled to moiety of said estate as specified aforesaid and as such tenants in common are of right entitled to partition of the real estate aforesaid, but that owing to the character and location of said real estate and number of parties, partition in kind cannot be had without great prejudice to the rights of all parties in interest.

"The court further finds that Messrs. Benecke & Benecke and F. C. Sasse, esq., have been employed by plaintiff as attorneys and to be allowed a reasonable compensation for their services herein to be taxed up as cost in this proceeding. Wherefore the premises considered and the court being fully advised, the court doth find and decree and adjudge that prayer for partition of said land be granted and that it is decreed and adjudged by the court that the lands be sold by the sheriff at public sale for terms cash in hand and that after deducting the cost of proceedings the proceeds be divided in accordance with this decree and that the share to which Louis Hecke would have been entitled to if living, shall be paid to the administrator of his estate, and the cause be continued to await the report of the sheriff."

The sheriff of Chariton County reported February 6, 1917, that he had sold the land at public auction to the highest bidders, in compliance with the aforesaid judgment, the parcel of fifteen acres having been bought by William and Charles A. Susawind for $2100, the other tract of sixty acres by Robert H. Hecke, one of the defendants, for $4200, and the purchase money for both tracts had been paid.

About a month after this report was filed, and on March 10, 1917, John Lane filed a petition to be made a defendant in the proceeding, alleging he was the widower of Anna E. Lane, deceased, and entitled to a curtesy interest in the lands; that he had not theretofore been made a party and had no notice of the suit for partition until

after the judgment was rendered and the lands sold; that he was willing to accept in lieu of his curtesy interest a gross sum in cash to be computed under the mortality tables of the State, concluding with a prayer to be made a defendant, for the court to ascertain the extent of his interest in the land and its value according to said mortality tables and that the value be paid him in lieu of his life estate. He made no averment about being in possession, and the conclusion to be drawn from the record is that he was not, but instead the parties plaintiff and defendant who are disputing the validity of his claim of a curtesy interest.

Omitting to notice some intermediate proceedings which are immaterial on this appeal, the following appear in the record: first, a demurrer to the intervening petition of Lane was filed by all the defendants and overruled; then, on October 17, 1917, George T. Hecke, Alice Hecke, Sarah W. Keith and Perry Keith, four of the defendants, filed an answer to Lane's petition, denying he was entitled to a gross sum in cash out of the proceeds of the land in lieu of an estate by curtesy, and praying the petition be dismissed.

The evidence taken on the issues raised by the petition and the answer to it, was intended to support the contention of the parties that Lane had forfeited his curtesy by deserting and failing to provide for his family. The facts, in substance, were: John and Anna Lane, the deceased, were married in 1873, and from two to four years thereafter a daughter, Emittie Lane, who afterwards became Emittie Roesen, was born of the marriage. In 1877 or 1878 Lane abandoned his wife and lived with her no more. During the years of his absence he stayed for various periods in Linn County, Missouri; Ft. Worth, Texas; Wichita, McPherson County, Emporia, Dodge City and Topeka, Kansas; Seneca, Missouri; Castle Rock, Cripple Creek and Leadville, Colorado; Pleasant Valley, Utah, and perhaps in other places. When he left home he took his daughter with him, kept her a few months and then his wife took charge of her. It is not

shown that a divorce ever was granted to either spouse, and presumably they continued to be husband and wife until the wife died. Neither does the record state the relationship of the parties to the action to Mrs. Lane, and it is rather vague about whether Lane's whereabouts after he left home were known to his wife and her heirs, but some of the parties knew he was living, at least for a good portion of the period of his absence. George Hecke testified he had not heard from him in eighteen or twenty years; but he testified, too, that his (Hecke's) father-in-law told him of seeing Lane in Seneca, Missouri, but not the year when he saw him. Lane testified he returned to Brookfield, Missouri, in 1900, and was in Linn County that winter with his brother, near Brookfield.

The court below on October 5, 1917, in passing on the issues raised by Lane's petition and the answer to it, found Lane was the widower of Annie E. Lane, and that Emittie Lane (afterwards Emittie Roesen) was their daughter; that Lane was sixty-three years old, was not a party to the partition suit, but was entitled to an estate by curtesy in the proceeds of the sale of the aforesaid lands. Other findings in the judgment, and the judgment itself, are as follows:

"The court further finds that there is now in the hands of the sheriff of this county for distribution among the heirs and legal representatives of the said Annie E. Lane, arising from said partition suit, the sum of $5737.35, and that the cost incident to this motion is $20.50 and that the present cash value of the interest of the said John S. Lane, in said fund, computed under the mortality tables of this State, is $2646.

"The court further finds that since the death of the said Annie E. Lane there has been collected in rents from the said lands so sold in partition the sum of $350, no part of·which has been paid to the said John S. Lane, but all of the same has been paid to the descendents of the said Annie E. Lane; and that in addition thereto the defendant, Robert Hecke, owes as rent from said lands the further sum of $160, and making in all the sum of

$510 in rents from said lands, which belongs absolutely to the said John S. Lane, as tenant by the curtesy, all of which rents should be charged to the descendants of the said Annie E. Lane, in proportion to which they owe 'the same.

"It is therefore ordered and adjudged and decreed by the court, that said sum of $5737.35, be distributed by the sheriff among the parties hereto entitled, in the following sums and amounts, to-wit:

| "Costs incident to motion | $ 20.50 |
|---|---|
| John S. Lane, curtesy interest | 2646.00 |
| John S. Lane, rent from lands | 510.00 |
| Louisa J. Carson | 453.47 |
| Alice V. Hecke | 453.47 |
| Robert Hecke | 293.47 |
| Sarah W. Keith | 453.48 |
| Emittie Roesen | 453.48 |
| Estate Louis Hecke, deceased | 453.48 |
| | $5737.35 |

"It is further ordered that this cause be continued to await the final report of the said sheriff distributing said funds."

The appeal was taken from that judgment, apparently by all the defendants.

The court below computed the value of Lane's estate for life by the curtesy, according to Chapter 82, Revised Statutes 1909. The first section of the chapter reads as follows:

"When a party as tenant for life, or by the curtesy, or in dower, is entitled to the annual interest on a sum of money, or is entitled to the use of any estate, or part thereof, and is willing to accept a gross sum in lieu thereof, or the party liable for such interest, or affected by such claim, has the right to pay a gross sum in lieu thereof, or if the court in any legal proceedings adjudge or decree a gross sum to be paid in lieu thereof, the sum shall be estimated according to the then value of an annuity of six per cent. on the principal

sum during the probable life of such person, according to the following table, showing the present value, on the basis of six per cent. interest, of an annuity of one dollar (according to the Carlisle tables of mortality) payable at the end of every year that a person of a given age may be living, for the ages therein stated." [R. S. 1909, sec. 8499.]

Next follow the table referred to in said section, and two other sections prescribing the rule of calculation and giving examples to show the proper use of it. No error having been assigned concerning the amount awarded to Lane, as the value of his curtesy, the sections need not be transcribed.

We think of no theory on which Lane is entitled to part of the proceeds of the parcels, as he was not a party to the suit prior to the sale, and his curtesy was neither sold nor bought, but only the interests and estates of the parties. [Smoot v. Judd, 161 Mo. 673, 691.] If the purchasers knew Lane was living and held the curtesy, probably the prices they bid were less than they would have offered had he been a party and his interest adjudged and sold. However that may be, they bought the titles only of the parties to the suit and, so far as appears on the present record, claim no more. As to whether they were misled regarding the state of those titles or should have relief for any reason, nothing should be said on this appeal. But as the facts appear at present, the money to be distributed was paid to the sheriff for the interests of those owners who were parties to the proceeding when the decree was entered and the lands sold, and belongs to them exclusively. The case of Hinds v. Stevens, 45 Mo. 209, wherein was discussed the right of a dowress whose husband died after judgment had been given fixing his interest as a coparcener, differs from this one in that her dower was consummate as soon as her husband died in the portion allotted to him, whereas Lane's curtesy covers the entire fee. It is true an acceptance by him of the portion of the proceeds awarded to him would estop him to

assert his curtesy interest hereafter (Bogart v. Bogart, 138 Mo. 419; Fischer v. Siekmann, 125 Mo. 165); but this rule of law does not meet fully the exigencies of the case, and other facts are to be considered.

This appeal having been taken from the final judgment ordering distribution of the proceeds, the proceeding is still open for the correction of errors, including a defect of parties. [Clark v. Sires, 193 Mo. 502; Collier v. Lead Co., 208 Mo. 246.]

Our statutes, following the practice of equity courts, are rigorous in requiring all persons interested in lands sought to be partitioned, to be made parties to the suit and their interests set out in the pleadings and determined by the judgment. [R. S. 1909, secs. 2561, 2562, 2572.] The rule which obtains in chancery regarding the parties to such suits, is held to apply, on a proper construction of the statutes, in full force to statutory actions for partition. [Estes v. Nell, 108 Mo. 173.] In the cited case the court said the rule ''in chancery, was that unless all persons whose 'interests in the subject-matter of the suit, and the relief sought, were bound up with that of others' were brought before the court and made subject to its jurisdiction, the suit would not be entertained. 'It was, therefore, indispensable that all the cotenants not uniting in the petition, be made defendants.' '' (Citing authorities). ''This rule in equity is made to apply to our statutory proceedings for partition (Section 7135) providing that 'every person having any interest in such premises, whether in possession or otherwise, shall be made a party to such petition.''' [L. c. 177.] Accordingly the judgment was reversed and the cause remanded for the omitted persons to be brought in as parties. A prior case was disposed of in the same way, because the owner of an undivided one-third of the premises had been left out of the proceedings, the court saying: ''Rosina is not a party to this suit, and as her interest appears on the face of the record, there can be no partition until she is made a party.'' [Dameron v. Jameson, 71 Mo. 97, 99.] Where

one who had a vested interest in the land to be divided was no party, and though the fact appeared on the face of the petition and no objection was raised on that score at the trial, it was held the defect was not waived, as it would have been in other actions; and this, be-cause the jurisdiction of partition suits had originally been in the chancery courts, which were careful to have before them all persons interested in the lands, so the entire title would pass and future controversies be avoided. To the same effect are Hiles v. Rule, 121 Mo. 248, 256; Lilly v. Menke, 126 Mo. 190, 214; Johnson v. Johnson, 170 Mo. 34, 56. And if the omission of inter-ested parties is passed over in the trial court, the gen-eral practice is to reverse the judgment on appeal. [30 Cyc. 202 and cases cited in note.]

The proper course would be to remand this case for the sale to be set aside and Lane brought in as a party, his interest determined and a resale ordered, if there' can be partition between a life tenant and remain-dermen. But in this jurisdiction and most others, a tenant for life, whether by curtesy or otherwise, absent statutory authority, cannot compel partition against re-maindermen and reversioners, nor they against him, and between such estates the remedy is unavailable ex-cept by consent of the respective owners. This is be-cause no common interest exists between them of any character, either in coparcenary, tenancy in common or joint tenancy. The right to partition in such cases ex-tends, for the benefit of cotenants for life, to allowing their estates to be divided between them, and for the benefit of remaindermen and reversioners, to allowing partition of their holdings, subject to the life estate. [Atkinson v. Brady, 114 Mo. 200; Hayes v. McRey-nolds, 144 Mo. 348; Stockwell v. Stockwell, 262 Mo. 671, 679.] Where the owner of an estate for life owned besides an undivided interest in the remainder, the remedy has been allowed for a division of the interests in remainder, subject to the life interest. For example, in one case it was said: "As the petitioner is himself

the owner of the life estate in the whole tract proposed to be divided, and also owns the interest of a part of the remainder mentioned, no objection can of course be made to the partition on account of the entire property being subject to a life estate." [Reinders v. Koppelmann, 68 Mo. 482, 500.] In another case the opinion said, on the authority of the preceding one: "That the estate sought to be partitioned is subject to be partitioned, is settled," but by looking at the briefs in connection with the opinion, it is perceived the suit was for a division among remaindermen, subject to an unexpired life term. [Preston v. Brant, 96 Mo. 552, 1. c. 559.] The fact of a co-interest also existed in Doerner v. Doerner, 161 Mo. 399, 407. One decision seems out of line with those which declare against the right of partition between life tenants and the owners of the fee; for in it the holder of a life estate was permitted, as co-plaintiff with one who held a contingent remainder, to maintain an action for partition against the other contingent remaindermen. [Sikemeier v. Galvin, 124 Mo. 367.]

Whatever support these three decisions last mentioned may lend to the view that life tenants may sue remaindermen in partition, and *vice versa,* was taken away by a later decision, where it was said regarding them: "While the three cases mainly relied upon by appellant may not have been expressly overruled, they have been intentionally disregarded in cases where they are cited and could have been followed. We hold they are not controlling authorities in this State as far as they conflict with the conclusion announced in this case." The conclusion referred to was against the right of persons to whom a testator had devised land "during their natural lives," with remainders over, to maintain an action to partition by a sale of the land, the value of their life estates to be paid to them out of the proceeds. [Hill v. Hill, 168 S W. 1165.] The same conclusion was reached in a still later opinion in which all the authorities in this State were examined. The action was where

the lands in controversy had been granted to the plaintiff and her bodily heirs, thereby creating an estate for life in her with remainders over to her children. One point presented for decision was the right of the plaintiff, as the holder of the life term, to maintain the action, and to decide the point it was necessary to interpret the first section of the article of our partition statutes. [R. S. 1909, sec. 2559.] Said section, on a first reading, appears to confer the remedy on any one or more of the persons holding an interest in lands, whether of joint tenancy, tenancy in common, coparcenary, fee, for life, years, by the curtesy or in dower. Following previous precedents the court held, notwithstanding the section mentioned owners of life estates held by the curtesy or otherwise, as entitled to partition, the remedy was allowed only when there were co-estates between the parties, saying:

"The controlling feature of the provision is that there must be an existing undivided tenancy or holding in land by two or more owners, susceptible of being so parceled between them as to become a several holding by each. We may at the outset eliminate Mrs. Stockwell, the life tenant, because she not only has nothing which is susceptible of division, her tenancy covering in its breadth the entire estate and in its length the period of her life, in and during which no other person can have any interest unless severed from this freehold by her own act. That this does not constitute a subject for partition is not only evident from the use of a word which, in such a connection, can have no other meaning than the severance of common and undivided interests, but also from the frequent adjudications of this court (Atkinson v. Brady, 114 Mo. 200; Throckmorton v. Pence, 121 Mo. 50; Stewart v. Jones, 219 Mo. 614)." [Stockwell v. Stockwell, 262 Mo. l. c. 679.]

Those remarks were followed by a thorough review of the Missouri cases on the question under discussion. In Atkinson v. Brady, 114 Mo. 200, supra, the statute where it speaks of suits by life tenants, by

the curtesy, etc., was construed to have no application to an estate by the curtesy alone, because the holder of it possessed the entire interest during his life, and there was nothing, so far as he was concerned, to partition; that the statutory authority given for an action by a curtesy tenant related only to estates held in common; for instance, where the deceased wife and another owned property as tenants in common at the demise of the wife, or her husband acquired an undivided interest afterwards, in addition to his curtesy interest; then, as a matter of course, he could have his right ascertained and his interest set off by a suit for that purpose. This view is sound, but it should be added that joint or cotenants for life may have partition between themselves; and a court has said that a leading text-writer meant to state no more than the latter proposition when he declared a tenant for life or years could, both at law and in equity, compel partition, citing Freeman on Partition, sec. 455. [Brown v. Brown, 67 W. Va. 251.] Whether this is a correct statement of that learned commentator's meaning, may be doubtful; for the few citations given in support of his text go further. In another case in this State where a parcel of land held by a dowress was sought to be partitioned between her and the owners of the remainder, this court decided she was neither cotenant nor joint tenant with the remaindermen, but owned the whole property for her natural life, independent and irrespective of other parties, and this being true, there was no interest to set off. [Hayes v. McReynolds, 144 Mo. 348, 353.] In both the Missouri cases just noticed, it was said remaindermen could have a partition of their interests, subject to the life estate.

The rules in the different states and the authorities declaring the rules have been collected and annotated in several volumes. [Brown v. Brown, 28 L. R. A. (N. S.) 125; Aydlett v. Pendleton, 32 Am. St. 776; Field v. Leiter, 125 Am. St. 997; McConnell v. Bell, 121 Tenn. 198, 130 Am. St. 770; Chickamauga Trust Co. v. Lonas,

L. R. A. 1918D, 451.] The notes to the last case are comprehensive and it will be perceived by reading them that the weight of authority is in accord with the Missouri decisions, the effect of which may be summarized as follows: first, except by statutory authority, compulsory partition is impossible between life tenants and remaindermen or reversioners; second, our statutes on the subject do not authorize compulsory partition of those interests; third, a partition between them may be granted if all the parties consent.

Some of the parties in the case before us are incapable of consenting to a partition, because two or three are minors and one is insane. Therefore the next question is whether, if the cause were remanded to have Lane brought in and another sale made to pass his interest, this course would be lawful. Unless there is statutory authority for it, clearly it would not be and it is incumbent on the courts to protect the legal rights of minors in proceedings of this kind. [Freeman, Co-Tenancy and Partition, 457.] And one can readily see their interests might be sacrificed orseriously impaired by a sale and division of the proceeds with the life tenant, computing the latter's interest by mortality tables. Persons who are *sui juris* may use their judgment about the expediency of such a course and determine for themselves whether they prefer to have partition by a sale and an apportionment of the purchase money with the curtesy holder, or await the termination of his life and estate. A different principle controls where some of the parties in interest are under the disability of minority or insanity. Courts have had occasion to consider the question and their conclusions are in harmony with what we have said. In one case minors by their guardian sued for the sale of lands they had inherited from the mother and in which their father, the defendant, owned the curtesy. The court in denying the relief prayed, on the ground of a possible wrong to the children, said it was the peculiar duty of courts to protect the rights of infants, and although a suit in chancery might be brought by a general guardian, neverthe-

less a minor was treated as the ward of the court an'·
under its cognizance and protection, c.ting 2 Story's
Equity Jurisprudence, ch. 35.    As a further reason
for the decision, the court pointed out that the proceeds
of a sale would be distributed according. to the tables o'
mortality, which would give the curtesy tenant, who was
forty-one·years of age, more than sixty-seven per cent
and the children thirty-two per cent; the owner of the
life estate thereby receiving more than the owners of the
fee.   In the present case the disparity of apportionment
would not be so. great, yet Lane would receive for his in-
terest over one-third of the purchase price of the land.

That statutes to enable property to be sold when
division in kind is impracticable are to be enforced only
when there are co-estates, has been decided by severa¹
courts.  A Kentucky statute provides for the sale of joint
estate if the land is indivisible without impairing its
value; but the section was held to apply only to the es-
tates in possession of persons holding jointly and not
where the possession was with an estate for life.    In
Kansas it was held a court had no power to compel a
partition either in kind or by sale of the interests of
remaindermen.   [Shafer v. Covey, 90 Kan. 588; Ryan
v. Cullen, 89 Kan. 879.]   A decision of this court bears
on the point, for in the Stockwell case the proposition was
pressed that the court could decree the sale of the inter-
ests of remaindermen by virtue of the section of the Par-
tition Chapter, which says: "If in any case, from the na-
ture and  amount of the  property sought to be divided,
and the number of the owners, it shall be apparent to the
court that the assignment of dower, if any, and partition
thereof, in kind, cannot be  made without great prejudice
to the owners, an order of sale may be made." [R. S.
1909 sec. 2612.]  The court pointed  out that said section
authorize a sale only in instances when the interests held
by the parties are co-interests, and, therefore, within the
scope of the remedy by partition.   Otherwise stated, the
sale cannot be ordered unless the different interests could
have been set apart in severalty by a partition in kind,

if the nature of the property would have permitted the division without prejudice to the parties.

But it may be argued the law for computing the value of life estates by the mortality tables has changed the rule, as it was declared in the decision last cited, although the case arose after the enactment of the mortality-tables law. But the court did not interpret the act with reference to the question in hand, and we must answer it without the help of a direct precedent. It is true a partition of real property may be ordered and the statutory provision for a sale enforced if the property is unsusceptible of division in kind, notwithstanding minors hold interests. [Thornton v. Thornton, 27 Mo. 302.] But we have seen that this rule governs only the cases in which the remedy by partition is allowed, namely, when the interests to be separated are of a joint or common kind, not where a life tenancy encumbers the fee. Nor is this rule affected by the words of the section regarding the mortality tables and directing their use: "If the court in any legal proceedings adjudge or decree a gross sum to be paid in lieu thereof" (that is, of tenancies for life, by the curtesy or in dower). Those words do not extend the authority of the courts to adjudge money to such a tenant in lieu of his interest, in instances or under circumstances theretofore unauthorized; but prescribe a mode to compute the value of his interests when, according to the settled law, this may be done. On reading the section we have quoted (Sec. 8499), it is apparent that it neither alludes to the remedy by partition, nor undertakes to amend the statutes which regulate the scope of the remedy. The language of the section expressed no purpose to change the law theretofore existing in this State against compulsory partition between life tenants and the owners of the fee, and so radical a change must be expressed or plainly implied for it to be held within the intention of the Legislature. The purpose of the enactment was to prescribe a method for computing the value of life estates whenever it is necessary to do so to enforce the rights of parties under the law as it stood, not

to impair those rights by compelling the acceptance of money in lieu of estates. The Carlisle tables were used to determine the value of a life estate, where the value was to be credited on an account (Carnes & Perry v. Polk, 5 Heisk. (Tenn.) 244); and where the value of such an estate was to be ascertained for the purpose of estimating the damages of remaindermen caused by changing the grade of a street (City of Joliet v. Blower, 155 Ill. 414); and under a statute which expressly empowered a court of chancery to sell an estate of dower or curtesy in partition, to find its present worth and apportion the proceeds of the sale accordingly (Cronkright v. Haulenbeck, 25, N. J. Eq. 513); and to compute the value of a dower interest in an action by the administrator of the dowress to recover the consideration agreed to be paid by the heirs of her husband for a relinquishment of all her rights in his estate (Andrews v. Broughton, 84 Mo. App. 640); and in an action by a widow for the death of her husband, to show the life expectancy of the deceased when he was killed (Boettger v. Iron Co., 136 Mo. 531); and sometimes to determine the risk and the rate of premiums on insurance policies (Abell v. Ins. Co., 18 W. Va. 400, 433). None of the Missouri cases that treat of the use of the tables, except two, deal with the sections in question. In Tebeau v. Ridge, 261 Mo. 547, it was held the statutory tables should be used to ascertain the value of an inchoate right of dower in a suit against a husband for specific performance of a contract by him to convey land, in order to deduct the value of the dower from the purchase price to be paid by the vendee. This case overruled the prior one of Real Estate Co. v. Spelbrink, 211 Mo. 671.

The decisions cited, supra, in no sense interpret those sections so as to determine the question we are considering, but are simply examples of the application of the tables in general, uninfluenced by legislation concerning them. But the cases do indicate, in our judgment, the kinds of litigation wherein our statutes contemplate the use of the mortality tables they prescribe. The theory

is untenable that the legislation enlarges the power of a court to enforce partition of estates in land, where there is no community of interest such as has been held heretofore to be subject to the remedy.  Indeed one court has gone so far as to hold a legislative enactment intended to have that effect would work deprivation of property without due process of law.  [McConnell v. Bell, 121 Tenn. 198, 130 Am. St. 770.]

The proceeds of the sale of the lands in the present case should be divided among the parties whose interests were sold; therefore the judgment is reversed and the cause remanded.  All concur.