MARY RUPP v. WILLIAM B. MOLITOR, JOHN W. MOLITOR and MARY MOLITOR, His Wife, LENA WEINGART and EDWARD J. WEINGART, Her Husband, and GEORGE MOLITOR, Appellants.—9 S. W. (2d) 609.

Division One, July 30, 1928.

*Conway Elder* and *Sievers & Hartmann* for appellants.

*Frank X. Heimenz* for respondent.

GANTT, J.—Suit to quiet title to the following described land:

"A part of lot twelve (12) as laid down on the plat of the division of the Lindell estate by commissioners in Gratiot League Square, more particularly described as beginning at a stone in the southwest corner of lot twelve (12), thence north six (6) chains and thirty-four (34) links to the south of Clayton road (now Clayton avenue)', thence eastwardly along the south line of Clayton road twelve (12) chains and twenty-six (26) links to the west line of lot number eleven (11), thence south three (3) chains and twenty (20) links to a stone, thence west ten (10) chains to the place of beginning, containing about four and one-half (4½) acres and bounded on the north by Clayton road, on the east by lot number eleven (11), on the south by property now or formerly of one Waterman and Berthold, and on the west by lot thirteen (13), and

"A part of lot four (4) of United States Survey 2037, township forty-five (45) north, range six (6) east, as laid down on the plat made in the division of the estate of Peter Lindell and appears on said plat as lot number thirteen (13), more particularly described' as beginning at a point at the southeast corner of lot thirteen (13), thence running westwardly eighteen (18) chains, thence north eleven (11) chains and eighty-six (86) links to Clayton road (now Clayton avenue), thence in a southeastwardly direction along the south line of Clayton road eleven (11) chains, thirty-four (34) links, thence south six (6) chains and thirty-four (34) links to the place of beginning, containing nine (9) acres, more or less, and bounded north by Clayton road, east by lot twelve (12), south by property now or formerly owned by one Waterman and others, and west by lot' number fourteen (14)."

While the petition and joint answer are conventional, by the reply plaintiff claims title to the above-described land as purchaser at a partition sale, and further claims that each of the defendants, after reaching the age of twenty-one, accepted from their guardian the balance due from the proceeds of the partition sale, and thereby was estopped from claiming an interest in the land, and further claims title by adverse possession. Defendants claim the court was without jurisdiction to partition the land and that the judgment is void and subject to collateral attack. Judgment was for plaintiff, and defendants appealed.

It is admitted that on and prior to January 1, 1896, the plaintiff, Mary Rupp, was the owner of an undivided one-half interest in the above-described land for life or during widowhood with power of sale, and that her children, John, Louisa, Wilhelm and Friederich were the owners of the fee subject to the interest of their mother. It is further admitted that at said time William, John, George and Gertrude Molitor and Lena Weingart, children of Anna Molitor, a deceased sister of Mary Rupp, were the owners of the other undivided one-half interest in the above-described land. It is further admitted that the plaintiff, Mary Rupp, instituted a suit in the Circuit Court of the City of St. Louis against her children and the children of Anna Molitor, returnable to the February term, 1896, to partition the above-described land; that the interests of the parties were correctly set forth in the petition; that the defendants were minors, and the court appointed a guardian *ad litem*, who filed his written consent to serve as such and filed a joint answer for all the defendants, in which he alleged that the defendants had no knowledge or information sufficient to enable them to form a belief as to the truth of the allegations of the petition, and denied each and every allegation therein contained; that the court found the parties to be interested as set forth in the petition and ordered that the land be partitioned by setting off to the Molitor children their one-half interest in kind and by setting off to Mary Rupp and her children their one-half interest in kind; that commissioners were appointed for that purpose, and they reported that division in kind could not be made, and thereupon the court ordered the land sold and the net proceeds divided among the owners according to their respective interests; that the land was accordingly sold by a special commissioner, and the plaintiff, Mary Rupp, being the highest and best bidder, became the purchaser thereof, and on January 4, 1897, said commissioner executed and delivered to her a deed therefor; that she was in continuous possession of the land from that time to the time of the trial of this cause in the circuit court, claiming to be the absolute owner thereof in fee simple; that the pro rata share of the Molitor children in the proceeds of said partition sale was $2039.27; that Mary Rupp, as provided in the will of her sister, Anna Molitor, was appointed guardian of the Molitor children by the Probate Court of the City of St. Louis; that as guardian she received the pro rata share of said children and controlled and managed the same under the direction of the probate court, and as each of said children became of age she paid to them the balance due from the proceeds of the partition sale, and that the youngest of them became of age on March 10, 1910; and that Gertrude Molitor died intestate May 19, 1906, leaving as her only heirs the defendants herein.

Before considering the questions presented it should be noted that Anna Molitor devised to her children her undivided interest in fee in the above-described land and prohibited a partition among them until the youngest child became of age. Her children were bound by this provision, but it could not affect the rights of the owners of the other undivided one-half interest.

I. Defendants contend "that Mrs. Rupp being a life tenant could not maintain an action in partition," and that judgment in the partition suit was void and subject to collateral attack.

The authority to partition land is found in Section 1995, Revised Statutes 1919, as follows:

"In all cases where lands, tenements or hereditaments are held in joint tenancy, tenancy in common, or co-parcenary, including estates in fee, for life, or for years, tenancy by the curtesy and in dower, it shall be lawful for any one or more of the parties interested therein, whether adults or minors, to file a petition in the circuit court of the proper county, asking for the admeasurement and setting off of any dower interest therein, if any, and for the partition of the remainder, if the same can be done without great prejudice to the parties in interest; and if not, then for a sale of the premises, and a division of the proceeds thereof among all of the parties, according to their respective rights and interests."

In construing this statute in Gray v. Clement, 286 Mo. 100, l. c. 106, 227 S. W. 111, we said:

"Early cases construing that statute have been followed by very recent cases in which it is held that the authority of a court to order a partition without the consent of all the parties is limited by the terms of the statute. The only estates authorized by Section 2559, Revised Statutes 1909, to be partitioned are estates which are co-terminous and not successive; co-tenants of a life estate may have partition of their life estate which would not affect the remainder; or, remaindermen, tenants in common, may have a partition of the remainder subject to the life estate. But there is no authority for a partition between the life tenant and a remainderman. [Stockwell v. Stockwell, 262 Mo. 671, l. c. 679, 680, 681, 682; Carson v. Hecke, 282 Mo. 580, 222 S. W. 850, l. c. 853.] The opinions in these cases review many cases in this State and reach the conclusion as stated."

So, if Mary Rupp and the Molitor children were co-tenants of a life estate, the court had jurisdiction to decree partition. If the Molitor children had owned only a life estate in an undivided one-half, it would not be contended that the life estates could not be partitioned. The fact that the Molitor children owned the whole of an undivided one-half seems to be the foundation for the contention

that partition could not be decreed. Their whole estate in an undivided one-half included a life estate in common with the life estate of Mary Rupp in the other undivided one-half, and included the remainder in their undivided one-half in common with the remainder estate of the Rupp children in their undivided one-half. It follows that Mary Rupp and the Molitor children were co-tenants of a life estate, and the Rupp children and the Molitor children owned the remainder in common. The fact that the court assumed to partition the life estate of Mary Rupp and the remainder in succession in her children did not render the judgment void. The Rupp children are not parties herein, they are long since of age and are not complaining.

Defendants direct attention to the following cases: Gray v. Clement, 286 Mo. 100, 296 Mo. 497, 246 S. W. 940; Stockwell v. Stockwell, 262 Mo. 671, 172 S. W. 23; Carson v. Hecke, 282 Mo. 580, 222 S. W. 850. In those cases the life tenant was the owner of a life estate in the whole of the land, and the defendants were either remaindermen or reversioners in fee. The cases are not in point.

Attention is also directed to the case of White v. Summerville, 283 Mo. 268, 223 S. W. 101. In that case a widow sought to have the land of her deceased husband sold in partition and her dower interest ascertained according to the mortality statutes and paid to her in money. It was correctly ruled this could not be done. The right of a life tenant to partition under facts similar to the facts of the instant case was not involved, and the case is not in point.

The court had jurisdiction to decree partition, and the judgment is not subject to collateral attack.

II. It is next contended that Gertrude and George Molitor and Lena Molitor Weingart, minor defendants in the partition suit, were not duly served with process, and for that reason were not bound by the decree therein.

The facts are as follows: The sheriff in making returns of service in the partition suit used a rubber stamped blank form of return, writing in the date of service and the name of the person served, and signed same by his deputy. The individual returns were stamped on a full sheet of paper, and at the time of the trial of the instant case this paper was incomplete, having been torn off or worn in two about the middle, leaving the return of the sheriff as to service on Lena and John Molitor complete with the exception of the signature of the sheriff.

It is the contention of plaintiff that the return of service on Gertrude Molitor was on the missing half of the paper.

The petition in the partition suit discloses the names of the minor defendants checked, with the figures 17 or 18 opposite the check marks. The return of the sheriff shows that William Molitor was served on January 17, 1896. Opposite the check mark in front of William Molitor's name are the figures 17. The return of the sheriff also shows that George Molitor was served on January 18, 1896. Opposite his name is a check mark and the figures 18. Opposite the names of John, Lena and Gertrude Molitor are check marks and the figures 18. The check marks and the figures 18 opposite the names of John, Lena and Gertrude indicate that these defendants were served with process in the partition suit.

In the partition suit in the instant case the court proceeded regularly to judgment. In Adams v. Cowles, 95 Mo. 501, l. c. 509, 8 S. W. 711, we held that, when a judgment is entered by a court of general jurisdiction, it will be presumed that the service of process necessary to confer jurisdiction on the court to act was legally issued and served even though the record be silent on that matter. In that case the following was quoted with approval: " 'Hence, though the existence of any jurisdictional fact may not be affirmed upon the record, it will be presumed, upon a collateral attack, that the court, if of general jurisdiction, has acted correctly, and with due authority, and its judgments will be as valid as though every fact necessary to jurisdiction affirmatively appeared.' [Freeman on Judg., sec. 124.]''

To the same effect: Meddis v. Kenney, 176 Mo. 200, 75 S. W. 633; State v. Hunter, 171 Mo. 435, 71 S. W. 675; Buddecke v. Ziegenhein, 122 Mo. 239, 26 S. W. 696; Gill v. W. O. W., 209 Mo. App. 63, l. c. 71, 236 S. W. 1073; Oldaker v. Spiking, 210 S. W. 59, l. c. 62; Viehmann v. Viehmann, 298 Mo. 356, 250 S. W. 565.

In the case of McClanahan v. West, 100 Mo. 309, 13 S. W. 674, we had under consideration the contention that a minor in a partition suit had not been served with process. In disposing of the question, we said:

"Besides, the record itself shows that George W. Buchanan was appointed guardian *ad litem* for the four minors, and that he filed answers for them. From which statements it will be presumed that the proper service was had upon the minors, and that the court, cognizant of this fact, thereupon appointed the guardian *ad litem;* and it will be presumed, also, that the attorney then appointed guardian *ad litem* would not have filed an answer for minors who had not been personally served, as required by law."

Now, in the partition suit under consideration the court appointed Charles W. Bates, an attorney of the city of St. Louis, as guardian *ad litem* for the minor defendants. He answered for all of them.

946

Therefore, it must be presumed that all of the minor defendants were duly served with process.

It follows the judgment should be affirmed. It is so ordered. All concur.